PEOPLE *v.* SINGER.

1. CRIMINAL LAW—APPEAL AND ERROR—SAVING QUESTIONS FOR
   REVIEW—TRIAL.
   Unless a ruling is asked or made, exceptions to argument of the
   prosecuting attorney in an assault case are not reviewable.

2. SAME—TRIAL—INSTRUCTIONS.
   Where respondent's counsel discussed the term of imprison-
   ment that might be imposed on the respondent, it was not
   erroneous for the prosecutor to reply to the argument or for
   the court to advise the jury that the matter of punishment
   should not concern them.

Exceptions before sentence from the superior court of
Grand Rapids; Stuart, J.   Submitted January 17, 1913.
(Docket No. 115.)   Decided March 20, 1913.

Harry Singer was convicted of assault.   Affirmed.

*Roger I. Wykes*, Attorney General, *Earl F. Phelps*,
Prosecuting Attorney, and *L. T. Herman*, Assistant
Prosecuting Attorney, for the people.

*Edward N. Barnard*, for respondent.

Respondent, for a reversal of his conviction, relies, in this court, upon:

(1) A statement made by the prosecuting attorney in his opening to the jury that it was expected to be proven that his intent in making the assault was "to do great bodily harm, and he is charged in a charitable way less than the crime of murder," a statement not objected to, concerning which no ruling was made nor exception taken.

(2) A designation of the respondent by the prosecuting attorney in the argument as, "Here is a man a large percentage animal," to which objection was made but no ruling and no exception entered.

(3) A statement in the argument of the prosecuting attorney to the following effect:

"You heard what one of your fellow men said this morning, that he got out of there just as quick as he could when he saw what was going on."

To this, counsel for respondent said:

"Put down an exception to that remark. The juror that was excused stated he got out of there just as quick as he could. An objection and exception."

No ruling was asked for or made. It is said in argument that a juror called and examined in the case on his *voir dire*, and excused, had made such a remark in answer to interrogatories put to him.

(4) The argument of the prosecuting attorney, apparently in answer to that made by respondent's counsel, to the effect that a verdict of guilty did not necessarily mean a prison sentence or one for a long term, that the matter of the punishment was in the hands of the court "and absolutely beside the case," an argument objected to, and to which an exception was entered, but concerning which no ruling was asked or made.

(5) The following statement in the argument of the prosecuting attorney, objected to and excepted to, but not ruled upon and no ruling requested:

"I want to say to you, when counsel says to you that

if you convict him you send him to State's prison for a term of years, that that is not true, and that that is absolutely beside this case, getting back to this case. Right now there is a demand for an exceedingly careful administration of this kind of business, hundreds of men out of employment, at no time could a case demand your careful consideration in this kind of transactions like it does right now. If you say by your verdict this is all right, this careless conduct is all right, we will wink at it, keep her going boys, whack away at these officers from behind or in front, and if two or three fellows are around in front, slip up behind with a stone and tunk them just as you see fit."

(6) The following statement:

'And I say, gentlemen of the jury, that the officers, the public, are entitled at this time to the most careful consideration of this case at your hands. You can't do any more than to put the case up to his honor and say, Judge, whatever law and justice require in this case and in your wisdom and judgment you do it; a conviction can do no more than that. An acquittal can simply say with reckless disregard to the lives of people, and the property of our best citizens, keep banging away, and pay no attention"

—which was, apparently, a concluding portion of the argument of the prosecuting attorney, to which counsel for respondent interposed, "Just make an exception to the whole argument."

(7, 8, 9, 10, 11) Upon the following from the instructions given to the jury by the court:

"It is claimed on the part of the respondent that, while he was there, he went simply to look on, and that he did not join in the attack on Brockmeyer at all; did not assault him or attack him in any way or strike him, and that when these officers drove up he was standing there peaceably looking on, his hands in his pockets, and that this officer or these officers jumped out and attacked him with these police clubs, struck him, and mauled him in the way that he was struck, without his having resisted arrest or thrown any stone or done anything as a reason why they should arrest him. He denies that he threw the stone at a policeman or struck at him or did anything at

all; that he simply wantonly got out of the automobile and picked him out, an innocent bystander, and pounded him in this way and put him in the automobile and took him down. * * * You have, on the other hand, the testimony of himself as to what he was doing, that he had no stone in his hand at all, that he was standing there peaceably looking on; as to whether the officers would get out and pick up a person that was peaceable and maul him in the way he has represented is for you to consider. The respondent has also produced the testimony of several witnesses to the effect that they didn't see him throw the stone or strike or do anything toward the officer, but that they did see the officer striking him. Now testimony of that kind is what is considered and called usually in law 'negative' testimony. It is not testimony that is considered very convincing except under peculiar circumstances. I suppose there could be in a crowd of that kind 1,000 or 1,500 people that could be called that did not see this affair at all, did not see this controversy between these officers and this man at all. That is no evidence that it did not take place, and testimony of that kind is only of value as it is shown that the person giving it would have seen—was so situated that they would have seen —any occurrence of that kind if it had been likely to have taken place, and whether these occurrences — of course, such an occasion like that would take place very rapidly — a diversion for a moment might take away the opportunity of seeing this stone thrown, or whether if any person should testify that they were with the respondent continually from the time that the thing began until he was arrested and knew that he threw no stone or something of that kind, it would be testimony that could be considered as strong testimony. * * * Of course, if a person does this or throws the stone or strikes the blow or strikes at the person, he must have the intent that this statute implies. * * * I treat jurymen as intelligent men, and I believe, when I instruct them it is their duty to find simply from the evidence whether the party is guilty or not guilty, that they will follow those instructions, and leave it to the court to do his duty and part of the matter, after the jury has passed upon the guilt or innocence. Under the sentences as courts now have to render them, while the laws are all just the same as they used to be in regard to penalties, the penalty for larceny is five years, not exceeding five years, and for

manslaughter not exceeding 15 years, and for burglary 5 years, or something like that; yet a judge now cannot sentence any person to the full limit of the law. Under what is called the indeterminate sentence, they pronounce the sentence that they shall not serve more than the 15 years or five years or the 10 years, whatever the limit is, nor less than some minimum sum which the court always must fix, and that minimum is six months to half the time. The judge cannot make the minimum more than half the extreme sentence. If the extreme penalty is 10 years, he cannot make it more than 5, and at the end of that time the party is liable to parole, to get out, but the judge is not obliged to even pass a State's prison offense upon any person that is convicted here, except for murder and for some offenses of that kind. Most cases can either impose a fine or put them on probation or take such course as seems best under all the circumstances, and I assure you that I try to give to my part of the duty a careful consideration and try to do what is right under all the circumstances."

(12) The claim that the verdict was contrary to the law and evidence of the case.

It appears there was a riot, or something resembling one, during a strike of workmen in Grand Rapids, and, according to the theory of the prosecution, respondent assaulted an officer, one of several hurriedly sent to the scene, using a stone for a weapon. Respondent claimed that he was an inoffensive and unoffending looker-on, who was himself assaulted by the officer. The argument addressed to the alleged erroneous instructions given to the jury is, in substance and effect, that the court belittled the respondent and the defense he was undertaking to make, gave expression to an opinion on the part of the presiding judge that the respondent was guilty and that the statements with respect to the sentence which might be imposed if respondent was convicted were calculated to induce—did solicit—the jury to convict respondent. The court premised what was said about sentences by the statement:

"Something has been said about the punishment for

these offenses. Of course, as I instructed some of you yesterday, or told some of you, the question of punishment, what the person may get, or whether it is a jail offense or a State's prison offense, is something that the jury should not concern themselves about or discuss or pay any attention to whatever. In fact, some judges absolutely refuse to give juries the punishment for any crime. I have never particularly declined to do that. I treat jurymen as intelligent men," etc.

Ostrander, J. (*after stating the facts*). We have read the record and are impressed that respondent had a fair trial. We do not commend the prosecuting attorney for the statements used by him indicated in the first, second, and third paragraphs of the foregoing statement of facts. But we are not satisfied that any prejudice to respondent resulted.

As to the other exceptions to the argument of the prosecuting attorney, they are based upon no rulings requested, or made, and need not be considered.

In so far as the prosecuting attorney talked to the jury about the possible sentence if there was a conviction, what he said appears to have been in reply to the argument of respondent's counsel.

The court seems to have been of opinion that the discussion of the matter by counsel warranted, if it did not require, some statement from the court. We find in the statement which was made no evidence of solicitation or invitation to the jury, but an accurate statement of the law and of the duty of the court; the whole statement being in support of the general proposition that the jury should not be concerned with the matter of punishment at all. The charge, read as a whole, is a correct and a fair statement of applicable law.

The conviction is affirmed.

Steere, C. J., and McAlvay, Brooke, Stone, and Bird, JJ., concurred. Moore and Kuhn, JJ., did not sit.