PEOPLE *v* LEWIS

1. CRIMINAL LAW—ACQUITTAL BY REASON OF INSANITY—DISPOSITION
OF DEFENDANT.

> Neither the prosecution nor the defense may comment about a
> defendant's disposition upon the return of a verdict of not
> guilty by reason of insanity.

2. CRIMINAL LAW — DEFENSES — INSANITY — INFLAMMATORY AR-
GUMENT.

> Prosecutor's argument to jury that if defendant were found
> not guilty by reason of insanity, "he can go out and shoot
> somebody else" and "you give him a license to kill", was so
> highly inflammatory that a reversal of defendant's convic-
> tion was warranted even though defense counsel invited the
> argument by referring to the indeterminate confinement in his
> closing arguments and no defense objection was made to
> the remarks since a cautionary instruction to the jury would
> not have eliminated the prejudice arising from the prosecutor's
> remarks.

Appeal from Washtenaw, Ross W. Campbell, J.
Submitted Division 2 December 14, 1971, at Lansing.
(Docket No. 9931.)   Decided January 17, 1972.

Maurice Lewis was convicted of assault with in-
tent to commit murder.   Defendant appeals.   Re-
versed and remanded.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 21 Am Jur 2d, Criminal Law § 45 *et seq.*
   Prejudicial effect of argument or comment that accused, if ac-
   quitted on ground of insanity, would be released from in-
   stitution to which committed.   44 ALR2d 978.
[2] 53 Am Jur, Trial § 504.
   5 Am Jur 2d, Appeal and Error § 545.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William F. Delhey,* Prosecuting Attorney, and *Karl V. Fink,* Assistant Prosecuting Attorney, for the people.

*Arthur J. Tarnow,* State Appellate Defender, for defendant.

Before: QUINN, P. J., and J. H. GILLIS and VAN VALKENBURG,* JJ.

J. H. GILLIS, J.  Defendant was convicted by a jury of assault with intent to commit murder. MCLA 750.83; MSA 28.278.  He now brings this appeal as of right.

At trial, defendant did not deny that he perpetrated the act giving rise to the crime with which he was charged, but, instead, claimed that he was legally insane at the time of the shooting, and, therefore, should be found not guilty by reason of insanity.

Defendant raises many issues on appeal, but the controlling one is posed as follows: Did the prosecutor's statements, made during closing argument, regarding the effect of a verdict of not guilty by reason of insanity, require a reversal in this case?

On cross-examination by the prosecutor of one of defendant's expert witnesses, the following colloquy transpired:

"*Q.* Well you would agree would you not, that possibly, let's say three or four months from now, some psychiatrist, other than yourself, who has passed the appropriate board examination and appropriately certified, might find the defendant sane?

"*A.* I agree.

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

*"Mr. Barnett [defense attorney]*: Your Honor, I object to that question, the sanity or the insanity of the defendant in three or four months is not an issue.

*"The Court:* The jury will be excused.

(*Jury left at 4:32.*)

*"The Court:* Yes, I think that the danger, the obvious danger, as I am sure both counsel are aware, is that the jury might get the impression, that if they were to find the defendant not guilty by reason of insanity, that he might then be found later to be sane and released; and that, of course, is the law, we don't want their judgment as to whether he was insane at the time of the offense tainted in any way by what the future might bring and should that come out I think I would declare a mistrial on motion, so I would caution, although I am going to sustain the objection, I am going to ask counsel to avoid pursuing that line any further. The jury may be brought back in.

(*Jury returned to the courtroom.*)

*"The Court:* The record may so indicate. The objection is sustained and the jury is instructed to disregard the last question."

Subsequently, counsel for defendant, in his closing argument to the jury, made the following statement:

"It is my opinion that really he has done nothing to show that Mr. Lewis was sane, everything that we have seen has been the act of one who is ill as he indicated in the event that you find Mr. Lewis not guilty by reason of insanity, he is going to Ionia State Hospital for the criminally insane at Ionia. I am sure I don't really have to describe the place, but for an indefinite period and as Mr. Shea says, is it three years, is it four years, is it one year, is it 20 years, is it 30 years. These psychiatrists have no doubt that Mr. Lewis is suffering from a mental illness so what we are asking here is not that you turn him loose, but that you put him in a position

where something can be done so that a thing like this will never happen again. We can't guarantee that he will not be out in two, or three years, we can't guarantee to him that he won't be there the rest of his life, but we are asking that the right thing be done.

"Now Mr. Shea has suggested that this is all a long involved plot on the part of Mr. Lewis; that he was going to fool everybody  *   *   *  . Do you really think that any of you would be smart enough to do that. I don't think I could do it, and ultimately why would he have done it. If he was that smart and can do it, does he do it just so he can go to Ionia for the rest of his life. It seems to me that the whole proposition is absolutely ridiculous. I can't buy it myself and I don't think anybody can."

Finally, the prosecuting attorney, on rebuttal, made the following remarks to the jury:

"Now how long will he stay if he is found not guilty by insanity. How long will he stay in Ionia? We don't even know; today if a psychiatrist would look at him today, this Friday, whether they might not say he is sane. Keep in mind this is strictly an opinion, just a judgment; I would say that they would say he is sane, or next week he goes to the institution thereafter, because see all he has to do is to show he is sane at this point he can tell the psychiatrist I fooled them, I did it, I knew I was doing it, just lay it right on the line, he has nothing to lose. What are they to say, by golly you did, we are going to keep you anyway, they can't keep him, because if he is sane they have to release him and he is right back out in the street again. So we are caught in the same judgment problem that we have in determining in the initial instance whether he was insane. He could just as easily be determined sane, or in the meantime if he has a kind of temporary insanity, if you will, then you believe that he was only insane just at that moment, he is sane now, then

if he is sane now, he doesn't have to stay in the hospital, *he can go out and shoot somebody else,* he can then have another phase of temporary insanity, if you will, uncontrollable impulse, irresistible impulse; in other words, *you give him a license to kill.*" (Emphasis supplied.)

The issue of defendant's disposition upon the return of a verdict has traditionally been a consideration for the court and not the jury. *People* v *Cole,* 382 Mich 695 (1969); *People* v *Williams,* 218 Mich 436 (1922); *Lyles* v *United States,* 103 US App DC 22; 254 F2d 725 (1957). This well-reasoned maxim was cut back somewhat by the *Cole* decision when it held that upon request of either defendant or the jury, an instruction must be given regarding the result of a verdict of not guilty by reason of insanity.[1] However, the Court did not go so far as to allow either the prosecutor or the defense to comment upon a defendant's disposition in such a case. In continuing to proscribe such conduct, the *Cole* Court no doubt sought to thwart the conduct which occurred in the case presently before us.

Numerous cases have recognized the highly prejudicial effect of a prosecuting attorney arguing to a jury that if defendant is found insane and committed to a hospital, he would be released in a short time only to commit further antisocial acts. *State* v *Nickens,* 403 SW2d 582 (Mo, 1966); *Wise* v *State,* 251 Ala 660; 38 So 2d 553 (1948); *Williams* v *State,* 68 So 2d 583 (Fla, 1953); *State* v *Johnson,* 267 SW 2d 642 (Mo, 1954); *Farris* v *Commonwealth,* 209 Va

---

[1] Pursuant to *People* v *Cole,* 382 Mich 695 (1969), the judge in the case presently before us gave the following instruction in his charge to the jury: "A verdict of not guilty by reason of insanity means that the defendant will be confined in a state hospital for the criminally insane for the remainder of his natural life, or until such time as it is determined that he has recovered and would not be harmful to other persons or their property."

305; 163 SE2d 575 (1968); *Smith* v *State,* 220 So 2d 313 (Miss, 1969). The issue before the jury is the defendant's sanity or insanity at the time of the commission of the crime and not the possibility or even probability that an accused will in the future commit some other criminal act. Such argument only "tends to destroy by fear the recognized defense of not guilty by reason of insanity", *Farris, supra,* and violates a defendant's right to be tried only on the offense charged.

We must not overlook the fact that in the case presently before us both the prosecuting attorney and defense counsel violated the principle of not commenting regarding the effect of a verdict of not guilty by reason of insanity. In effect it could be said that defense counsel provoked and invited the prosecution to return to the subject which it previously had been warned by the court not to pursue. Further jeopardizing the claim for reversal is the fact that no objection was made to the prosecutor's prejudicial statements in closing argument. However, we do feel this situation is distinguishable from the one in *People* v *Singer,* 174 Mich 361 (1913). In that case the Court held that the prosecutor had not committed error in commenting to the jury regarding the possible sentence if there was a conviction where what was said was in reply to defense attorney's argument respecting the same. The Court, being influenced in its decision by the nature of the prosecutor's reply, stated:

"We find in the statement which was made *no evidence of solicitation or invitation to the jury,* but an accurate statement of the law and of the duty of the court; the whole statement being in support of the general proposition that the jury should not be concerned with the matter of punishment at all." (Emphasis supplied.)

By no stretch of the imagination could it be argued that in the present case the prosecution in his remarks in closing argument did not try to prejudice the defendant. In fact, we find such statements as "he can go out and shoot somebody else" and "you give him a license to kill" so highly inflammatory that a reversal is warranted though no objection was made. As indicated in *People* v *Humphreys,* 24 Mich App 411 (1970), the failure of defense counsel to object to a prosecutor's improper line of argument is a bar to appellate review only where the goal of that objection—a cautionary instruction to the jury—in all likelihood would have eliminated the prejudice arising from the prosecutor's remark; however, where the prejudice created cannot be eliminated despite any cautionary instruction that could have been given, and, thus, an objection would have been pointless, a failure to object will not preclude appellate review.

Reversed and remanded.

All concurred.