PEOPLE v SZCZYTKO

Decision of the Court

1. Criminal Law—Disposition of Defendant—Insanity—District and Prosecuting Attorneys—Argument to Jury—Insanity Acquittal—Prejudice—Constitutional Law—Objections—Instructions—Appeal and Error.

Neither a defendant's lawyer nor a prosecutor may during argument to the jury properly advert to the disposition of the defendant should he be acquitted by reason of insanity, per T. M. Kavanagh, C. J., and T. G. Kavanagh, Swainson, Williams, Levin, and M. S. Coleman, JJ.; conviction affirmed where: the defense of insanity was interposed at trial, and the prosecutor's challenged argument that if the defendant was found not guilty by reason of insanity he could be released from the mental institution by going through some legal paper work, under the circumstances, was not so prejudicial as to require reversal and the trial judge ruled the prosecutor's argument to be improper and restricted further development of it, per T. E. Brennan, J.; prosecutor's comments to the jury regarding a defense of insanity and concerning the disposition of the defendant in the event of a verdict of not guilty by reason of insanity did not deny defendant any constitutional right where there were sustained objections and subsequent proper instructions by the trial judge because the errors were rendered harmless beyond a reasonable doubt by a conscientious trial judge and do not render defendant's conviction infirm, per M. S. Coleman, J.; an incorrect statement by a prosecutor in making even an impermissible argument regarding disposition of a defendant found not guilty by reason of insanity should in most cases be rectifiable by a curative

References for Points in Headnotes
[1, 2, 4–7, 9–11, 13] 53 Am Jur, Trial §§ 458, 459, 463.
[3] 53 Am Jur, Trial § 509.
[8] 21 Am Jur 2d, Criminal Law § 223.
[12] 53 Am Jur, Trial § 663.
[14] 65 Am Jur 2d, Rape §§ 1–14.
[15] 30 Am Jur 2d, Evidence § 1134 et seq.

instruction unless the matter deteriorates seriously, erroneous argument of both counsel ordinarily should not require a new trial, per T. G. KAVANAGH and LEVIN, JJ.

SEPARATE OPINION

T. E. BRENNAN, J

2. CRIMINAL LAW—PENALTY FOR OFFENSE—INSTRUCTIONS.

> *The general rule has always been that neither the court nor counsel should address themselves to the question of the disposition of a convicted defendant; indeed, it is proper for the court to instruct the jury that they are not to speculate upon such matters; that they are to confine their deliberations to the issue of guilt or innocence.*

3. TRIAL—INSTRUCTIONS.

> *The function of the court's instruction to the jury is to acquaint them with the pertinent, relevant points of law which they need to know in order to enter upon their deliberations and discharge their responsibilities.*

4. CRIMINAL LAW—DISTRICT AND PROSECUTING ATTORNEYS—PROSECUTOR'S ARGUMENT—GUILTY VERDICT—INSANITY ACQUITTAL.

> *The prosecutor is properly prevented from arguing to the jury the advantages of a guilty verdict over an insanity acquittal.*

5. CRIMINAL LAW—INSTRUCTIONS—PENALTY FOR OFFENSE—INSANITY ACQUITTAL—HOSPITAL COMMITMENT.

> *The courts and juries of Michigan should be returned to the salutary rule that the jury is not to be concerned with the penalty which is a matter for the discretion of the court; the rule requiring the court to instruct the jury that a defendant found not guilty by reason of insanity is not thereby released and discharged but is committed to a mental hospital should be disapproved and the Michigan Supreme Court case adopting that rule should be overruled.*

6. CRIMINAL LAW—INSANITY ACQUITTAL—DISTRICT AND PROSECUTING ATTORNEYS—PROSECUTOR'S ARGUMENT—PREJUDICE.

> *Prosecutor's challenged argument, where the defense of insanity was interposed at trial, that if the defendant was found not guilty by reason of insanity he could be released from the mental institution by going through some legal paper work, under the circumstances, was not so prejudicial as to require reversal and the conviction should be affirmed where the trial judge ruled the prosecutor's argument to be improper and restricted further development of it.*

Separate Opinion

M. S. Coleman, J.

7. Criminal Law—Prosecutor's Remarks—Insanity—Disposition of Defendant—Constitutional Law—Objections—Instructions—Appeal and Error.

*Prosecutor's comments to the jury regarding a defense of insanity and concerning the disposition of the defendant in the event of a verdict of not guilty by reason of insanity did not deny defendant any constitutional right where there were sustained objections and subsequent proper instructions by the trial judge because the errors were rendered harmless beyond a reasonable doubt by a conscientious trial judge and do not render defendant's conviction infirm.*

8. Criminal Law—Trial—Legislative Intent—Statutes.

*Neither legislative intent nor the ends of justice require a flawless criminal trial (MCLA 769.26).*

Separate Opinion
T. G. Kavanagh and Levin, JJ.

9. Criminal Law—Disposition of Defendant—Insanity—District and Prosecuting Attorneys—Argument to Jury.

*Neither a defendant's lawyer nor a prosecutor may during argument to the jury properly advert to the disposition of the defendant should he be acquitted by reason of insanity.*

10. Criminal Law—Disposition of Defendant—Insanity—Argument to Jury—District and Prosecuting Attorneys—Instructions—New Trial.

*An incorrect statement by a prosecutor in making even an impermissible argument regarding disposition of a defendant found not guilty by reason of insanity should in most cases be rectifiable by a curative instruction; unless the matter deteriorates seriously, erroneous argument of both counsel ordinarily should not require a new trial.*

Dissenting Opinion

T. M. Kavanagh, C. J., and Swainson and Williams, JJ.

11. Criminal Law—Disposition of defendant—District and Prosecuting Attorneys—Jury.

*The Michigan Supreme Court did not go so far as to allow either the prosecutor or the defense to comment upon a defendant's*

*disposition when it cut back the traditional maxim that the disposition of the defendant is not a proper concern of the jury.*

12. CRIMINAL LAW—INSTRUCTIONS—DISPOSITION OF DEFENDANT—VERDICT—INSANITY—OBJECTION.

*The rule allowing the trial judge, upon request, to instruct the jury on the disposition of a defendant in the event of the return of a verdict of not guilty by reason of insanity, restricts exclusively to the trial judge the function of informing the jury on the law and procedures accompanying the return of a verdict of not guilty by reason of insanity; should either advocate overstep the bounds of this rule, the proper response should be to raise an immediate objection and request cautionary instructions of the court; not to engage in a further violation of that rule.*

13. CRIMINAL LAW—PROSECUTOR'S REMARKS—INSANITY—DISPOSITION OF DEFENDANT—INSTRUCTIONS—APPEAL AND ERROR.

*Prosecutor's misleading remarks to the jury concerning the disposition of the defendant in the event of a verdict of not guilty by reason of insanity that indicated that defendant could effect his own speedy release from custody if committed to a mental institution were not rendered harmless by the corrective actions of the trial court because, viewed in the context of the entire record, the Michigan Supreme Court is not able to say beyond a reasonable doubt that the prosecutor's erroneous deviation from the rule allowing the trial judge, upon request, to instruct the jury on the disposition of a defendant in the event of the return of a verdict of not guilty by reason of insanity did not contribute to appellant's conviction; the disputed remarks may well have led the jury to suspend its own powers of judgment in reviewing the evidence before it and, in the interest of justice, defendant's conviction must be reversed.*

14. RAPE—ASSAULT WITH INTENT TO RAPE—PRELIMINARY EXAMINATION—BINDING OVER—EVIDENCE—APPEAL AND ERROR.

*No reversible error is found in a decision of the Michigan Court of Appeals holding that evidence was sufficient to uphold the examining magistrate's action in binding the defendant over on a charge of assault with intent to rape where the evidence produced at the preliminary examination showed that defendant gained entrance to an apartment by misrepresentations made to the victim, that he was in the apartment for several minutes attempting to make telephone calls and using the bathroom before he turned off the lights and proceeded to assault the complaining witness at which time he tore off most*

*of her clothes from her body, and his assault was interrupted
by someone with a flashlight at the door or window which
caused him to leave the apartment.*

15. CRIMINAL LAW—CONFESSION—EVIDENCE—WALKER HEARING—
WAIVER—APPEAL AND ERROR.

*No reversible error is found in a decision of the Michigan Court
of Appeals holding that the trial court properly admitted
defendant's confession into evidence where defendant was prop-
erly advised of his rights and the trial judge ascertained in the
Walker hearing that defendant knowingly waived such rights.*

Appeal from Court of Appeals, Division 3, Fitz-
gerald, P. J., and R. B. Burns and Holbrook, JJ.,
affirming Kent, Stuart Hoffius, J. Submitted April
3, 1973. (No. 10 April Term 1973, Docket No.
54,132.) Decided November 20, 1973. Rehearing
denied February 21, 1974.

40 Mich App 161 affirmed.

Dennis R. Szczytko was convicted of assault with
intent to rape and assault with a dangerous
weapon with intent to commit great bodily harm
less than murder. Defendant appealed to the Court
of Appeals. Affirmed. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *James K. Miller,*
Prosecuting Attorney, and *Donald A. Johnston, III,*
Chief Appellate Attorney, for the people.

*George E. Pawlowski,* for defendant on appeal.

T. E. BRENNAN, J. We are here called upon to
consider the question of comment by the prosecut-
ing attorney upon the effect of a verdict of not
guilty by reason of insanity.

## THE FACTS

The Court of Appeals told the story of this crime

in great detail. *People v Szczytko,* 40 Mich App
161; 198 NW2d 740 (1972). For this opinion, it is
sufficient to note that defendant was informed
against upon two counts; assault with intent to
commit rape and felonious assault with intent to
do great bodily harm less than murder, and was
found guilty as charged by a jury verdict. He was
sentenced to a prison term of 7-1/2 to 10 years.

The defense of insanity was interposed at trial.
During the people's summation to the jury, the
following occurred:

"Counsel brings up, if you come back by reason of—
not guilty by reason of insanity that the defendant will
go to a mental institution appropriate considered and
according to the laws of the State of Michigan. That's
right. But, *all he has to do is, through some legal paper
work ask to be released*—(Emphasis added.)

"*Mr. Pawlowski [defense attorney]:* Well, now, wait a
minute. Objection.

"*Mr. Zerial [assistant prosecutor]:* He brought it up
on his argument, your Honor.

"*The Court:* You may proceed.

"*Mr. Zerial:* So all he has to do is say I am well now.
I am well.

"*Mr. Pawlowski:* Mr. Zerial, you know this isn't true.
Now why are you saying this?

"*Mr. Zerial:* A writ of habeas corpus and—

"*The Court:* Just a moment. I think I will restrict you
on this. I think that the matter of what the procedures
are in the hospital is far beyond the province of this
jury. I will restrict you on that.

"*Mr. Zerial:* I think when opposing counsel brings up
an argument that I am allowed to rebut it and I say
that—

"*The Court:* You may proceed. I will restrict you on
that."

In its instructions to the jury, the court stated:

"Now as I have indicated to you, you are not to base your verdict upon any speculation or guessing or surmising but base it upon the evidence as you have heard it and the exhibits as they have been received here in evidence. If you find the defendant guilty the ultimate punishment is not in your hands or disposition of the case, but that is in the sole discretion of the Court. If you find him not guilty by reason of insanity, then it would be the duty of the Court to commit him to the hospital authorities who would take over at that particular time."

## THE ISSUES

We granted leave to appeal in this case to review the apparent conflict between the decision of the Court of Appeals in the present matter and the holdings of two other panels of that Court in similar cases. *People v Lewis,* 37 Mich App 548; 195 NW2d 30 (1972); and *People v Secorski,* 37 Mich App 486; 195 NW2d 8 (1972).

At issue is the propriety of prosecution comment to the jury upon the disposition of a defendant found not guilty by reason of insanity.

## DISCUSSION

In *People v Cole,* 382 Mich 695, 719–720; 172 NW2d 354 (1969), a majority of this Court adopted the rule in *Lyles v United States,* 103 US App DC 22; 254 F2d 725 (1957), requiring the court to instruct the jury that a defendant found not guilty by reason of insanity is not thereby released and discharged, but is committed to a mental hospital.

In *Cole,* this Court made a choice between two competing considerations (p 720):

"(1) the possible miscarriage of justice by imprisoning a defendant who should be hospitalized, due to refusal to so advise the jury; and (2) the possible 'invitation to

the jury' to forget their oath to render a true verdict according to the evidence by advising them of the consequence of a verdict of not guilty by reason of insanity."

Not considered in *Cole* was another possibility; that of a miscarriage of justice in hospitalizing a defendant who should be imprisoned due to advice to the jury which:

a) suggests that the disposition of a defendant found not guilty by reason of insanity is more humane and rehabilitative than the range of dispositions possible under a verdict of guilty, or

b) suggests that the disposition of a defendant found not guilty by reason of insanity is more protective of society than the range of dispositions available under a verdict of guilty.

The general rule, of course, has always been that neither the court nor counsel should address themselves to the question of the disposition of a convicted defendant. Indeed, it is proper for the court to instruct the jury that they are not to speculate upon such matters; that they are to confine their deliberations to the issue of guilt or innocence.

The *Lyles-Cole* rule is an exception to that general proposition. It proceeds from the following rationale, quoted in *People v Cole* from *Lyles v United States* (pp 719–720):

" 'This point arises under the doctrine, well established and sound, that the jury has no concern with the consequences of a verdict, either in the sentence, if any, or the nature or extent of it, or in probation. But we think that doctrine does not apply in the problem before us. The issue of insanity having been fairly raised, the jury may return one of three verdicts, guilty, not guilty, or not guilty by reason of insanity. Jurors, in common with people in general, are aware of the mean-

ings of verdicts of guilty and not guilty. It is common knowledge that a verdict of not guilty means that the prisoner goes free and that a verdict of guilty means that he is subject to such punishment as the court may impose. But a verdict of not guilty by reason of insanity has no such commonly understood meaning. As a matter of fact its meaning was not made clear in this jurisdiction until Congress enacted the statute of August 9, 1955 [69 Stat 710, DC Code § 24-301 (1951) (Supp 5)]. It means neither freedom nor punishment. It means the accused will be confined in a hospital for the mentally ill until the superintendent of such hospital certifies, and the court is satisfied, that such person has recovered his sanity and will not in the reasonable future be dangerous to himself or others. We think the jury has a right to know the meaning of this possible verdict as accurately as it knows by common knowledge the meaning of the other two possible verdicts.' "

There are a number of problems with this line of reasoning. First, common knowledge that a verdict of guilty subjects the defendant to "such punishment as the court may impose" is a far cry from knowing the maximum penalty for the crime charged, whether probation can be imposed and upon what condition, whether parole can be granted and after how long, or who makes the judgment to put the defendant at his liberty and upon what considerations.

There is simply no comparison between a vague understanding that a guilty defendant will be subject to some kind of punishment and the specific understanding that an insanity-acquitted defendant "will be confined in a hospital for the mentally ill until the superintendent of such hospital certifies, and the court is satisfied, that such person has recovered his sanity and will not in the reasonable future be dangerous to himself or others".

Thus the *Lyles* argument that the jury "has a

right to know the meaning of [the insanity verdict] as accurately as it knows by common knowledge the meaning of the other two possible verdicts" does not support the jury instruction which *Lyles* approves.

The *Lyles* charge gives the jury a very definite understanding of the effect of an insanity acquittal. It presents a picture of certain, humane and safe disposition of the accused. By comparison, the common understanding of the jury with respect to the effect of a conviction is likely to be very confused. Published reports of recidivism, prison atrocities, and community skepticism of judicial leniency combine to suggest that the traditional rule against jury speculation upon the disposition of a defendant was well conceived.

But the specificity of the *Lyles* charge is not its only shortcoming.

Of more immediate concern to the case at hand is the fact that the *Lyles* charge invites argumentation by counsel.

As a general proposition, lawyers base their arguments on the court's instructions. While they are not permitted to instruct the jury on points of law, or urge arguments of legal propositions to the jury, it is nevertheless commonplace and permissible for a lawyer to say to the jury, "Now the court will instruct you in such and such a fashion" and proceed to build his summation upon the legal framework of the court's charge.

The function of the court's instruction to the jury is to acquaint them with the pertinent, relevant points of law which they need to know in order to enter upon their deliberations and discharge their responsibilities. It would be a novel rule indeed if the court is obligated to instruct the jury upon a certain point of law, and then

promptly inform them that such point of law is immaterial to their consideration and should be ignored.

In *Cole*, a majority of this Court opened the door to jury consideration of the post-verdict disposition of an insanity-acquitted defendant. Having done so, we must recognize that zealous defense counsel will argue to the jury from that charge, emphasizing their client's claimed insanity and pleading for humane care and treatment, while pointing out that the security of the community is protected.

Argument used in *People v Lewis* is typical:

" 'It is my opinion that really he has done nothing to show that Mr. Lewis was sane, everything that we have seen has been the act of one who is ill as he indicated in the event that you find Mr. Lewis not guilty by reason of insanity, he is going to Ionia State Hospital for the criminally insane at Ionia. I am sure I don't really have to describe the place, but for an indefinite period and as Mr. Shea says, is it three years, is it four years, is it one year, is it 20 years, is it 30 years. These psychiatrists have no doubt that Mr. Lewis is suffering from a mental illness so what we are asking here is not that you turn him loose, but that you put him in a position where something can be done so that a thing like this will never happen again. We can't guarantee that he will not be out in two, or three years, we can't guarantee to him that he won't be there the rest of his life, but we are asking that the right thing be done.

" 'Now Mr. Shea has suggested that this is all a long involved plot on the part of Mr. Lewis; that he was going to fool everybody * * * . Do you really think that any of you would be smart enough to do that. I don't think I could do it, and ultimately why would he have done it. If he was that smart and can do it, does he do it just so he can go to Ionia for the rest of his life. It seems to me that the whole proposition is absolutely ridiculous. I can't buy it myself and I don't think anybody can.' "

Where does this leave the prosecutor?

The issue of post-verdict disposition has been injected by the court. The defense has used it to maximum advantage. What can he say in rebuttal?

He is not permitted to tell the jury the maximum prison term for the offense. He is not permitted to tell the jury that a presentence report will be developed, or that the court may order psychiatric evaluation. In short, he is prevented—and properly so—from arguing the advantages of a guilty verdict over an insanity acquittal.

This leaves two courses open. The prosecutor can ignore the insanity-acquittal disposition argument, or he can attempt to attack it directly.

He will ignore the argument at no small peril, for the jury having been told that insanity-acquittal means hospital confinement—perhaps even long-term confinement—the inference is substantial that the insanity plea is sincerely interposed. Here is a defendant who asks for help. He appreciates his dilemma. He chooses confinement, and does not wish to be at large until disinterested authority concludes that his liberty can be safely restored.

But how is the prosecutor to attack the argument head-on? The only logical tack is that found to be prejudicial in *Lewis* and *Secorski;* to tell the jury what advantage a defendant might have to gain by pleading insanity. He can impugn the sincerity of the plea only if the jury can be told the whole story.

The whole story, of course, is not permitted to be told under the *Lyles* and *Cole* cases. It looks something like this:

| GUILTY | NOT GUILTY BY REASON OF INSANITY |
| --- | --- |
| Permanent record of conviction | No conviction |
| Possible prison sentence for minimum term of years | No minimum period of confinement |
| Ineligible for parole consideration until minimum term is served | Eligible for immediate release on convalescent status |
| Release decision made by parole board | Release decision made by medical superintendent on recommendation of Center for Forensic Psychiatry |
| Ineligible for final discharge until maximum term is served | Eligible for final discharge immediately |
| No right to apply to a court for termination of confinement based upon claimed rehabilitation | Immediate right to apply to probate court for release based upon claimed recovery |
| Conclusive presumption of guilt | Rebuttable presumption of insanity |

All of these might be the kind of "practical" considerations which a jury might like to take into consideration.

Indeed, all of the myriad side roads opened by the *Cole* decision should now be closed to further travel.

*People v Cole* should be overruled, the *Lyles* charge disapproved, and the courts and juries of Michigan returned to the salutary rule of *People v Williams,* 218 Mich 436; 188 NW 403 (1922).

In any event, the instant appeal should be affirmed. The trial judge ruled the prosecutor's challenged argument to be improper, and restricted further development of it. Under the circumstances, it was not so prejudicial as to require reversal.

Affirmed.

M. S. Coleman, J. Leave to appeal was granted in this case to determine what restrictions are placed upon the arguments of counsel in the trial court by *People v Cole,* 382 Mich 695; 172 NW2d 354 (1969).

My disagreement is not with the rule set down

in the *Cole* opinion. However, I cannot agree that the result there reached requires reversal of defendant's conviction in the instant case.

Defendant's major argument is that the prosecutor's comments constituted reversible error. In this particular case, the post conviction disposition was introduced by defendant's attorney, not by the prosecutor who only commenced to reply. (It is noted that a writ of habeas corpus might well have resulted in just such a release.) He was prevented from proceeding by the judge. No mistrial was requested by the defendant. A proper instruction to the jury was given by the judge.

The dissent proceeds by a two stage analysis. The first acknowledges that *Cole* does not specifically prohibit counsel from indicating the possible results of a verdict of not guilty by reason of insanity. Such a prohibition is drawn from "the implicit rationale of *Cole*". The second stage then proceeds to label as reversible error any violation of this prohibition. Such label is applied in this case despite the presence of sustained objections and subsequent proper instructions by the trial judge.

I cannot agree that *Cole* mandates such clairvoyance on the part of a judge as to require the restriction by the judge before an utterance is made, nor does it mandate that all possible "false starts" are grounds for reversible error despite anything the judge may do to inform the jury of the correct law, as in this case.

The dissenting opinion cites in support of its position the case of *People v Secorski,* 37 Mich App 486; 195 NW2d 8 (1972). The finding of the Court of Appeals was that the judge erred in failing to give an instruction to the jury such as was actually given in this matter. *People v Lewis,*

37 Mich App 548; 195 NW2d 30 (1972) was decided on the same day as the *Secorski* case (January 17, 1972) by the Court of Appeals. The facts of that case were flagrant and post conviction disposition arguments by both counsel went unchecked. The facts are not at all comparable. The *Secorski* case is supportive of this opinion while the *Lewis* case is inapposite to the facts before this Court.

There is a growing tendency to find the same jury charged with the handling of extensive factual testimony and complicated instructions on the law too feebleminded or too easily swayed to handle even simple problems such as the one presented here. This defendant was not denied any constitutional right, nor was the error of either prosecution or defense so offensive as never to be considered harmless.[1] In my opinion, errors were rendered harmless beyond a reasonable doubt by a conscientious trial judge.

It is well periodically to review the pertinent statute:

"No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice." MCLA 769.26; MSA 28.1096.

It is my belief that neither legislative intent nor the ends of justice require a flawless trial. I find no miscarriage of justice in the instant case.

I would affirm.

LEVIN, J. *(concurring in affirmance).* We agree

---

[1] *People v Robinson,* 386 Mich 551; 194 NW2d 709 (1972).

with Justice SWAINSON's analysis and conclusion that neither a defendant's lawyer nor a prosecutor may during argument to the jury properly advert to the disposition of the defendant should he be acquitted by reason of insanity.

However, since the assumption underlying the *Cole*[1] instruction is that a jury will be wondering about the actual disposition of the defendant (and, accordingly under *Cole,* the judge should cover the subject when instructing the jury), this case differs from the *Robinson*[2] and *Humphreys*[3] cases where but for the prosecutor's argument the pejorative information would not have been before the jury at all.

Since the disposition of a defendant acquitted by reason of insanity is, by hypothesis, in the minds of the jurors, an incorrect statement by a prosecutor in making even an impermissible argument regarding disposition should in most cases be rectifiable by a curative instruction.

Impermissible argument of this kind will continue to occur in future cases as many lawyers and judges will not become aware of, or will forget, or perhaps ignore the rule of this case prohibiting lawyer comment on disposition. A requirement of per se reversal would enable a reckless defense lawyer to entice an unwitting prosecutor into creating a record (which an unknowing judge would not protect) requiring automatic reversal.

Unless the matter deteriorates seriously, as in *Suave v Carling Brewing Co,* 374 Mich 487; 132 NW2d 655 (1965), erroneous argument of both counsel ordinarily should not require a new trial.

---

[1] *People v Cole,* 382 Mich 695; 172 NW2d 354 (1969).—REPORTER.

[2] *People v Robinson,* 386 Mich 551; 194 NW2d 709 (1972)—REPORTER.

[3] *People v Humphreys,* 24 Mich App 411; 180 NW2d 328 (1970).—REPORTER.

Here the prosecutor was restricted shortly after he began to make an argument regarding the defendant's disposition. Had the defendant's lawyer requested a curative instruction, the judge could have taken any sting out of the prosecutor's argument by stating that in truth the defendant might remain in the custody of the department for years, longer than he might serve if he was convicted, perhaps for the rest of his life—to secure his release more would be required than filling out a piece of paper.

T. G. Kavanagh, J., concurred with Levin, J.

Swainson, J. *(dissenting)*.

*FACTS:*[1] On the evening of January 10, 1970, 15-year-old Mary Fortuna was baby sitting at the upstairs flat of Mrs. Peggy Siedlecki in Grand Rapids. After the children had been put to bed, Miss Fortuna watched television and read until approximately 2:30 a.m. when a knock was heard at the door. She went to the door and admitted a male (later identified as defendant Dennis Szczytko) after he requested to use the telephone to obtain assistance for Mrs. Siedlecki who he said was downstairs with car problems.

Upon being admitted into the flat, defendant sat down momentarily, requested and used the bathroom and attempted to make a phone call, apparently not reaching anyone. Defendant sat down again and then suddenly switched off the overhead lights and began to beat Miss Fortuna with his hands and a telephone receiver and to tear off her clothing.

The police, who had been summoned by a neigh-

---

[1] The facts of this case are set forth in greater detail in the opinion below. 40 Mich App 161; 198 NW2d 740 (1972).

bor, quickly arrived and frightened off defendant who fled through a back window. The police discovered the badly beaten unconscious body of Miss Fortuna naked except for her blouse which was wrapped around her neck. First aid was administered and after she regained consciousness, the police took Miss Fortuna to the hospital where she was treated for her injuries. The hospital examination revealed that she had not been sexually molested.

Miss Fortuna furnished the police with a description of her assailant. They began to search for defendant and arrested him two days later at a Grand Rapids hotel on charges of violation of a city ordinance prohibiting registering at a hotel under an assumed name.[2] Defendant was taken in for questioning on this charge early on the morning of January 13th. He was given the *Miranda*[3] warnings and consented to answer questions regarding the ordinance violation. He was advised again of his *Miranda* rights and the questioning shifted to the assault of Mary Fortuna. After further questioning, defendant made a 14-page confession in which he admitted beating the complainant. The confession was ruled admissible at a pretrial *Walker*[4] hearing.

After his confession defendant was formally arrested and bound over to circuit court on charges of assault with intent to rape, MCLA 750.85; MSA 28.280, and assault with a dangerous weapon with intent to commit great bodily harm less than murder, MCLA 750.84; MSA 28.279.

Defendant raised as his defense to the charges a claim of insanity resulting from a psychomotor

[2] Grand Rapids Ordinance Code, ch 152, art 6, § 9.168a.

[3] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).

[4] *People v Walker,* 374 Mich 331; 132 NW2d 87 (1965).

epileptic seizure. At defendant's jury trial expert witnesses were called to substantiate that defense. The trial was far from an objective battle of experts, however. The proceedings were marked by the emotional testimony of Miss Fortuna and the overzealous actions of the assistant prosecuting attorney. The court instructed the jury on possible verdicts including not guilty by reason of insanity. A verdict of guilty as charged was returned and defendant was sentenced to serve seven and one-half to ten years in state prison.

On appeal, appellant raised four issues of error before the Court of Appeals. In a lengthy opinion that Court reviewed each issue and affirmed the conviction. *People v Szczytko,* 40 Mich App 161; 198 NW2d 740 (1972). An application for leave to appeal was filed with the Supreme Court which we granted, 388 Mich 755 (1972), in order to consider the proper scope of advocacy under our prior decision of *People v Cole,* 382 Mich 695; 172 NW2d 354 (1969).

## I.

We turn now to examine appellant's primary claim of error.

Whether comments made by the prosecution to the jury in reference to the disposition of defendant in the event of the return of a verdict of not guilty by reason of insanity constitute reversible error?

In *People v Cole, supra,* this Court found it in the best interests of justice to allow the trial judge, upon request, to instruct the jury on the disposition of a defendant in the event of the return of a verdict of not guilty by reason of insanity. The Court, in *Cole,* adopted the position of the Court of

Appeals for the District of Columbia as set forth in *Lyles v United States,* 103 US App DC 22, 25; 254 F2d 725, 728 (1957):

"This point arises under the doctrine, well established and sound, that the jury has no concern with the consequences of a verdict, either in the sentence, if any, or the nature or extent of it, or in probation. But we think that doctrine does not apply in the problem before us. The issue of insanity having been fairly raised, the jury may return one of three verdicts, guilty, not guilty, or not guilty by reason of insanity. Jurors, in common with people in general, are aware of the meanings of verdicts of guilty and not guilty. It is common knowledge that a verdict of not guilty means that the prisoner goes free and that a verdict of guilty means that he is subject to such punishment as the court may impose. But a verdict of not guilty by reason of insanity has no such commonly understood meaning. * * * It means neither freedom nor punishment. It means the accused will be confined in a hospital for the mentally ill until the superintendent of such hospital certifies, and the court is satisfied, that such person has recovered his sanity and will not in the reasonable future be dangerous to himself or others. We think the jury has a right to know the meaning of this possible verdict as accurately as it knows by common knowledge the meaning of the other two possible verdicts."

In the present case, the defense properly requested the trial court to give the *Cole-Lyles* instruction. Prior to the court's instructions, however, the assistant prosecuting attorney in his closing arguments made the following remarks:

"Counsel brings up, if you come back by reason of— not guilty by reason of insanity that the defendant will go to a mental institution appropriate considered and according to the laws of the State of Michigan. That's right. But, all he has to do is, through some legal paper work ask to be released—

"*Mr. Pawlowski [defense counsel]:* Well, now, wait a minute. Objection.

"*Mr. Zerial [assistant prosecuting attorney]:* He brought it up on his argument, your Honor.

"*The Court:* You may proceed.

"*Mr. Zerial:* So all he has to do is say I am well now. I am well.

"*Mr. Pawlowski:* Mr. Zerial, you know this isn't true. Now why are you saying this?

"*Mr. Zerial:* A writ of habeas corpus and—

"*The Court:* Just a moment. I think I will restrict you on this. I think that the matter of what the procedures are in the hospital is far beyond the province of this jury. I will restrict you on that.

"*Mr. Zerial:* I think when opposing counsel brings up an argument that I am allowed to rebut it and I say that—

"*The Court:* You may proceed. I will restrict you on that."

Appellant argues that the above quoted remarks of the prosecuting attorney destroyed the *Cole-Lyles* instruction and hence require a reversal of his conviction. In response, the people contend that the disputed remarks were warranted because of prior statements concerning disposition made by the defense attorney; and, in any event, were rendered harmless by the corrective actions of the trial court.

The closing arguments of the defense counsel were not transcribed so it is impossible for us to judge the factual merit of the prosecution's claim that the above quoted remarks were a direct response to the closing arguments of the defense.[5]

---

[5] Two other statements of the defense mentioning the need for treatment and the possible length of confinement at a treatment facility have been preserved on the record. The first appeared in defense counsel's opening statement.

"You are going to hear an awful lot of testimony from defense's two psychiatrists and the prosecution's one psychiatrist. I am sure that not only I but the prosecution will attempt to have the doctors

However, we find that a proper understanding of
the holding in *Cole* makes such a factual determi-
nation unnecessary. Although our Court in *Cole*
did not expressly restrict the prosecution or de-
fense from arguing to the jury on the disposition
of a defendant found not guilty by reason of insan-
ity, we find that the implicit rationale of *Cole*
precludes such argument. *Cole* rejected the major-
ity rule which forecloses all consideration of sen-
tence or other disposition of a defendant from the

explain as clearly as possible as to what they are talking about, and
you can be sure that I will do that, because I am sure that once you
hear this testimony from the doctors that you will be of the opinion
that I am, that this boy at the time did not know what he was doing,
could not control his acts, had no motive whatsoever for committing
this crime, and that you will form a conclusion that he needs
psychiatric help and not punishment under the laws of this state."

The second developed out of the direct examination of defense
expert, Dr. Lynn W. Blunt.

"*Q.* In your medical professional opinion do you feel that the
defendant can be assisted in the—in a psychiatric way?

"*A.* I felt that there is some—that he does show some features
which would make him amenable to treatment. Treatment would be
directed at three things, actually; the psychomotor seizure disorder
probably being the easiest to treat since he could be given anti-
convulsive medication which he has never had because the situation
has now been diagnosed. The other treatment would be directed at his
underlying personality disorder, which I feel is present, and his
alcoholism. I feel that his use of alcohol is very much contra-indicated
with this abnormal EEG and his tendency toward psychomotor at-
tacks. He would have to stop the use of alcohol.

"*Q.* Would this be an in-custody type of mental treatment for the
most part?

"*A.* Yes it would.

"*Q.* And would you have any idea as to the length of time that
would be required as far as this treatment would be concerned?
Would it be a long time, short time?

"*A.* I would think that it would be a fairly long period of time. He
would require in-patient treatment. The character disorder part
would be difficult, the alcoholism would be the most difficult part to
treat and I would think that he would require therapy over a period
of several years, probably I would say 8 to 10 years, 6 to 10 years,
possibly.

"*Q.* This would be in a psychiatric hospital?

"*A.* Yes. Under the Michigan Department of Mental Health."

In neither case did the people object to the statement or testimony
when presented at trial.

jury. In its place was adopted the *Lyles* rule which permits the court in the limited case where a verdict of not guilty by reason of insanity is raised to " * * * definitively inform the jurors of the applicable law [regarding disposition] and to separate law from advocacy." *People v Hampton,* 384 Mich 669, 680; 187 NW2d 404 (1971). When the Cole Court cut back the traditional maxim that the disposition of the defendant is not a proper concern of the jury " * * * the Court did not go so far as to allow either the prosecutor or the defense to comment upon the defendant's disposition in such a case." *People v Lewis,* 37 Mich App 548, 552; 195 NW2d 30 (1972).

The Court of Appeals in its opinion below found the closing remarks of the prosecution permissible under *People v Singer,* 174 Mich 361; 140 NW 522 (1913), which recognized the right of the prosecution to reply to defense arguments concerning possible sentences. We disagree with the Court of Appeals. The prosecutor's argument in *Singer* was described by the Court as follows:

"The argument of the prosecuting attorney, apparently in answer to that made by respondent's counsel, to the effect that a verdict of guilty did not necessarily mean a prison sentence or one for a long term, that the matter of the punishment was in the hands of the court 'and absolutely beside the case,' an argument objected to, and to which an exception was entered, but concerning which no ruling was asked or made." 174 Mich 362; 140 NW 522.

The prosecutor in *Singer* factually stated the correct rule of law regarding sentencing and commendably sought to confine the jury to its proper deliberative role. *Singer* clearly cannot be claimed as authority for remarks such as those in issue in the instant case.

We, moreover, find *Singer* inapposite to the facts before us. *Singer* did not deal with the verdict of not guilty by reason of insanity. As herein above discussed, the *Cole-Lyles* rule restricts exclusively to the trial judge the function of informing the jury on the law and procedures accompanying the return of a verdict of not guilty by reason of insanity. Should either advocate overstep the bounds of this rule, the proper response should be to raise an immediate objection and request cautionary instructions of the court; not to engage in a further violation of the *Cole-Lyles* rule.

In examining the assistant prosecuting attorney's remarks we are guided by " * * * the primary purpose of [the *Cole-Lyles]* instruction [which] is to insure that a defendant will not be found guilty because the jury fears that he will be set free if an insanity verdict is returned." *People v Hampton,* 384 Mich 669, 676; 187 NW2d 404 (1971). In the present case, rather than aiding the trial court in the proper application of *Cole,* the prosecutor sought to kindle in the jury just that fear that the *Cole-Lyles* instruction is designed to alleviate. Similar prosecutorial conduct has been twice condemned by other panels of the Court of Appeals. *People v Secorski,* 37 Mich App 486; 195 NW2d 8 (1972); *People v Lewis, supra.* Likewise, courts in other states have reversed convictions obtained after the prosecutor has misleadingly argued to the jury that a verdict of not guilty by reason of insanity will provide no protection to society since a committed defendant can quickly and easily obtain his own release from custody. *Williams v State,* 68 So 2d 583 (Fla, 1953); *People v Mallette,* 39 Cal App 2d 294; 102 P2d 1084 (1940); *State v Johnson,* 267 SW2d 642 (Mo, 1954); *State v Nickens,* 403 SW2d 582 (Mo, 1966); *Smith v State,* 220 So 2d 313 (Miss, 1969).

The prosecution finally argues that the disputed remarks were rendered harmless by the corrective actions of the trial court.[6] We cannot agree. The remarks must be viewed in the context of the entire record. MCLA 769.26; MSA 28.1096; *People v Robinson,* 386 Mich 551, 563; 194 NW2d 709, 713 (1972). Viewed in context, we are not able to say beyond a reasonable doubt that the prosecutor's erroneous deviation from the *Cole-Lyles* rule did not contribute to appellant's conviction. *People v Liggett,* 378 Mich 706, 717; 148 NW2d 784 (1967); *People v Robinson, supra.*

The assistant prosecuting attorney should have been aware that the presentation of evidence and argument at this highly emotional jury trial required prudent handling if defendant was to receive a fair trial. Instead of being zealous in the pursuit of a fair trial, he was over-zealous in his efforts to obtain a verdict of guilty. We cite two examples in the margin below.[7]

---

[6] In addition to restricting the assistant prosecuting attorney during his remarks concerning defendant's disposition, the trial court delivered the following excerpt in the jury instructions:

"Now as I have indicated to you, you are not to base your verdict upon any speculation or guessing or surmising but base it upon the evidence as you have heard it and the exhibits as they have been received here in evidence. If you find the defendant guilty the ultimate punishment is not in your hands or disposition of the case, but that is in the sole discretion of the Court. If you find him not guilty by reason of insanity, then it would be the duty of the Court to commit him to the hospital authorities who would take over at that particular time. And I am not going to try to outline for you each and every possible verdict but I believe I have given you enough instruction so that you understand them."

[7] On people's direct examination, Mary Irene Fortuna gave testimony regarding the attack. She stated that she was fully dressed prior to the attack and remembered having her clothes torn off forcibly by defendant during the attack. She stated that she then fainted and when she revived found herself injured and naked; this latter testimony having already been independently established through the responding police officers. She further testified that her facial injuries required approximately 30 stitches and hospitalization for 5 or 6 days. Despite this prior testimony, the prosecution closed its direct examination of complainant in the following manner:

Although we find it unnecessary to review appellant's claim that this over-zealous conduct itself

---

"*Q.* Okay. Would you look at Exhibit No. 5, People's proposed exhibit; do those items look familiar to you? Would you look inside it?

"*The Court:* Perhaps you can help her take things out. (Witness crying)

"*A.* (Witness complied with the request.)

"*Q.* Mary, would you help me in identifying this piece of clothing?

"*A.* Yes.

"*Q.* What is that—what does that remind you of?

"*A.* That was the blouse that I was wearing.

"*Q.* Would you identify that for me, please?

"*A.* Those are the slacks.

"*Q.* Could you identify that?

"*A.* That is the girdle I was wearing.

"*Q.* Are these the panties . . .

"*A.* Yes.

"*Q.* . . . that you were wearing?

"*A.* Yes.

"*Q.* Is that the bra?

"*A.* Yes.

"*Mr. Zerial:* You may examine them.

(Mr. Zerial tossed the clothing on defense counsel table.)

"*The Court:* Just a minute. Let's put it back in the bag, Mr. Zerial.

"*Mr. Pawlowski:* Mr. Zerial, I would appreciate . . . '

"*The Court:* Just a moment. You don't need to go into anything. Put it—will you put it in the bag, please, Mr. Zerial?

"*Mr. Zerial:* I thought he might want to look at them, your Honor.

"*The Court:* If he does, he may take them out.

"*Mr. Pawlowski:* May we have a short recess of about five minutes, your Honor?

"*The Court:* No, we will continue.

"*Mr. Pawlowski:* Your Honor, may the record show that the prosecuting attorney . . .

"*The Court:* We will take care of it at a later time.

"*Mr. Zerial:* I would say that they were tossed to opposing counsel. No other questions at this time, your Honor. You may cross-examine."

During his closing statement the assistant prosecuting attorney made several questionable remarks. These remarks tended to misconstrue the expert psychological testimony and to cast contempt upon the defendant's proffered defense of insanity. To avoid quoting out of context, we set forth that portion of the closing argument delivered immediately following the trial court's curtailment of the remarks in issue in the body of this opinion.

"*What—what can we do with this defendant? Very simply we can find him guilty. And what is the answer? I will tell you what the answer is, and it is, very simply, you find him guilty. You tell that*

constituted prejudicial error, we note that these actions and statements formed a backdrop to the prosecutor's misleading remarks that indicated that defendant could effect his own speedy release from custody if committed to a mental institution. Corrective instructions in some situations would assure us that the jury followed the law in reaching its verdict. In this case, however, we must conclude that the disputed remarks "may well have lead the jury to suspend its own powers of judgment in reviewing the evidence before it". *People v Humphreys,* 24 Mich App 411, 419; 180 NW2d 328 (1970).

In the interests of justice, appellant's conviction must be reversed.

## II.

Defendant additionally argues that we find that the examining magistrate lacked sufficient evidence to bind him over to circuit court on the charge of assault with intent to rape and that the trial court erred in admitting defendant's confession into evidence. After a thorough examination of these allegations, we find no reversible error in the opinion below (Parts I and II) on these issues.

The Court of Appeals is affirmed in part and reversed in part. Defendant's conviction is reversed and this case remanded to the Kent County Circuit Court.

T. M. KAVANAGH, C. J., and WILLIAMS, J., concurred with SWAINSON, J.

---

*defendant you can't go out and viciously beat someone like that. You tell him you can't do that. You can't do it nor no one else and come in and try to play off amnesia, try to play off that I don't recall and play off insanity. You tell him that and I guarantee you that is what we can do. That is what we can effect. We can make the world safe for the little Mary Fortunas. That's what we can do. We can find him guilty and we can tell him we don't buy that, that hocuspocus that you are trying to pull on us, this instant insanity."*