PEOPLE v TARPLEY

1. CRIMINAL LAW—PREJUDICIAL ARGUMENT—POINTS NOT AT ISSUE.

A prosecutor's stressing of the fact that defendant had a gun and pulled it out in the car with the complaining witness was intentionally prejudicial where these facts were not in issue during the trial.

2. CRIMINAL LAW—PREJUDICIAL ARGUMENT—CRIMES NOT IN INFORMATION.

A prosecutor's statement about a charge of murder is prejudicial to defendant where the information does not include a charge of murder and where the testimony presented would not sustain a charge of murder.

3. CRIMINAL LAW—PREJUDICIAL ARGUMENT—HOMOSEXUALITY.

A prosecutor's references to defendant's prior homosexual experience was prejudicial to defendant, in his trial for assault with intent to murder, where the references were presented in a manner which could not help but inflame the jury.

4. CRIMINAL LAW—PREJUDICIAL ARGUMENT—PERSONAL BELIEF IN GUILT.

A prosecutor's remarks that he personally believed the defendant was guilty and he was unable to believe anything said by the defendant is prejudicial to defendant since it could lead the jury to suspend their own powers of judgment.

5. CRIMINAL LAW—PROSECUTOR'S ARGUMENT—PREJUDICE—MISCARRIAGE OF JUSTICE.

The prosecutor's argument was prejudicial and inflammatory where he stressed defendant's possession and use of a gun while in complainant's car, which was not in dispute, where he exceeded the scope of the information and the testimony presented by referring to murder when the information charged defendant with assault with intent to murder, where he sought to damage defendant's credibility as a witness by frequent and repeated references to defendant's admitted prior homosexual

REFERENCE FOR POINTS IN HEADNOTES
[1-5] 53 Am Jur, Trial § 480 *et seq.*

experiences and to alleged homosexual activity between defendant and complainant the night of the shooting, and where the prosecutor stated his personal belief in defendant's guilt, saying "only lies come out of his [defendant's] mouth"; the cumulative effect of the prosecutor's remarks was so inflammatory and so prejudicial that even had the defense objected, no cautionary instruction could have eliminated the prejudice created, and defendant's conviction constituted a miscarriage of justice requiring reversal and remand.

Appeal from Macomb, Alton H. Noe, J. Submitted Division 2 February 8, 1972, at Lansing. (Docket No. 11705.) Decided May 30, 1972.

Kenneth E. Tarpley was convicted of assault with intent to commit great bodily harm less than murder. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *George N. Parris,* Prosecuting Attorney, *Thaddeus F. Hamera,* Chief Appellate Lawyer, and *Don L. Milbourn,* Assistant Prosecuting Attorney, for the people.

*Sam F. Trentacosta,* for defendant on appeal.

Before: McGregor, P. J., and Levin and Targonski,* JJ.

Targonski, J. Defendant appeals as of right from a conviction by jury verdict of assault with intent to do great bodily harm in violation of MCLA 750.84; MSA 28.279. We adopt the following abbreviated statement of facts from the appellee's brief.

On the evening of October 24, 1970, the complaining witness George Garrison, 17 years of age,

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

was employed at Young's Party Store in St. Clair Shores, Michigan. At approximately midnight he closed the store after having cleaned it up. About ten minutes before closing he called his fiancee on the phone and told her he would stop by her home briefly after closing the store. He also called the store owner at 5 minutes to 12 before leaving the store. Shortly after leaving the store near the corner of Nine Mile and Mack he picked up a hitchhiker who told him that his girlfriend had stolen his car. Mr. Garrison then offered to take the hitchhiker home after stopping briefly at his fiancee's house. Both Garrison and his fiancee identified the defendant as the hitchhiker. Other witnesses placed the defendant in a bar next door to the complaining witness's place of employment earlier on the evening in question and the defendant admitted his presence in the bar.

Garrison did stop briefly at his fiancee's home a few minutes later. She saw the defendant in Garrison's car and after a brief interval Garrison left her home with the avowed purpose of taking the defendant home. Garrison testified that after driving a short distance he felt a sting on his right temple and the defendant said "stop the car or I'll let you have another one like the first". Garrison apparently lost consciousness at this point and his car went off the road into a ditch where it became stuck.

Shortly thereafter the complaining witness staggered to the door of a home a short distance away. He was bleeding heavily from the head and in a state of shock. He told the family to call the police and that he had been hit by a gun by a man in a blue Mustang. His car was subsequently found in a ditch a short distance away.

Garrison was taken to the hospital immediately

where it was determined that he had been shot in the head, that many fragments of a bullet were imbedded in his brain and that it was surgically impractical to remove the bullet fragments. Before losing consciousness at the hospital Garrison gave a full description of his assailant to a police officer. This description was broadcast over police radio along with continuing reports of locations in the adjacent area where someone answering the defendant's description had been seen on foot.

A short time later a police car for the City of Warren was checking an area where a man had been observed on foot, and the officer saw a man answering the broadcast description walking down the street. As the officers approached this individual he broke and ran between several houses. The officers gave chase on foot and followed the man over several fences. This individual, subsequently identified as the defendant, was finally apprehended after one of the officers shot him in the leg. The officers recovered a .22-caliber revolver from the ground near one of the fences that the defendant had jumped over in the course of pursuit.

Defendant was taken to Bi-County Hospital in Warren where he was held as a police prisoner until he was sufficiently recovered to leave the hospital. Defendant was released from the hospital on October 29, 1970, and arraigned the same day on a charge of assault with intent to murder.

At the conclusion of the people's case and after disposition of preliminary motions by the defendant's counsel defendant took the witness stand in his own behalf. The substance of his testimony was that he had no idea how he had gotten into Garrison's car. He testified that he woke up abruptly in the car and found Garrison sexually

molesting him. Further, when he protested Garrison jumped off of him and began to drive the car away. The defendant drew his gun and pointed it at Garrison in an effort to compel the complaining witness to let him out of the car. The defendant then testified that Garrison grabbed at the gun which went off accidentally, shooting the complaining witness in the head. The jury returned a verdict of guilty of assault with intent to do great bodily harm less than the crime of murder. MCLA 750.84; MSA 28.279. Defendant appeals this conviction as a matter of right. He was charged in the information on which tried with the crime of assault with intent to murder. MCLA 750.83; MSA 28.278.

Defendant raises four issues on appeal. We choose to discuss only the third such ground raised by the defendant as we believe it will be dispositive of this matter and a discussion of the other issues would not enhance the jurisprudence of this state significantly to justify such discussion.

We do not believe that the language employed in either brief properly frames the third issue and consequently select the following language as properly presenting the issue before the Court:

> *Was the prosecuting attorney's closing argument containing comments upon defendant's guilt and credibility sufficiently prejudicial to deny defendant a fair and impartial trial?*

The prosecution contends that the remarks of the prosecutor in the trial court in his closing argument were proper but, in any event, even if not proper they are not before this Court for review since there was no objection during the course of the trial, nor was there any request for a curative instruction. As a general proposition of law a conviction will not be reversed if by failing

to object the defendant has allowed the impact of the prosecutor's remarks to go uncorrected by an instruction. *People v David Smith,* 16 Mich App 198 (1969). From a review of the cases it is apparent that the failure to object is and should be a bar to review only where the goal of objection—a cautionary instruction—in all likelihood would have eliminated the prejudice arising from the prosecutor's remarks. *People v Humphreys,* 24 Mich App 411, 416 (1970). With this standard in mind we proceed to an examination of the remarks made by the prosecutor during the course of his argument to the jury. The plaintiff in its brief states that exception is taken to the fact that appellant has quoted only selected portions of the prosecution's argument out of context and then proceeds to present its own selected portions likewise out of context. Accordingly, we have examined the entire transcript of the argument presented by the prosecution at trial and cite some examples of the objectionable language employed in the course of such argument.

On the very first page of the transcript of the prosecutor's argument appears the following:

"Now, as you know the charge is not murder; this is fortunate and thank the Lord it is not. Mr. Garrison is still living four months after this, so the charge is assault with intent to commit murder.

\* \* \*

"That you heard this testimony that definitely put Ken Tarpley in that car and definitely showed that he had the gun, and in fact owned this Imperial [gun]. We even convinced him so that when he got on the stand he didn't deny it.

"Now, if we failed in our proofs of putting him in the car and putting him there with a gun then he could say, 'well, there is a defense, I haven't been identified, I haven't been put at the scene of the crime, and this is a

monstrous case of identification,' so we did prove those elements, and there is another reason why I'm glad we did, because I don't want you ladies and gentlemen of the jury *to rely for any essential elements in this case on anything that Kenneth Tarpley says to you. I don't want you to have to do that.* (Emphasis added.)

"If this case were retried again and we knew what the defense was going to be we would still go through that because we want proof that you can believe and *I don't believe you can believe by even the word of mouth of this man.* (Emphasis added.)

"Now, was Ken Tarpley ever in Garrison's car? George Garrison told us that he picked Ken up and after the assault he staggered into the Windhorst home. * * * He kept repeating this [I have been hit with a gun by a man in a blue Mustang] like a broken record automatically with no chance to make up a story, so apparently someone was in that car.

* * *

"I think you heard one of the finest bits of scientific testimony you will ever hear * * *. [H]e put Ken Tarpley in that car with fingerprints * * * and he traced them to Tarpley.

* * *

"These were compared with fingerprint cards at the station and so Ken was in the car, and you don't have to rely on Ken's testimony for that. *You can take that on the word of people you can believe, who are unimpeached and credible.* (Emphasis added.)

"You don't have to take it on the credibility of a once convicted felon as he told us he is. You don't have to take it on the word of somebody who at the pre-trial hearing, as far as the ownership of this gun goes, testified *exactly to the contrary* of what he testified at trial and under oath both times. (Emphasis added.)

"*This is what he thinks of an oath.* You don't have to take the word of someone whose livelihood .he says two years and his friend says maybe three years was hustling queers. * * * Nobody raping him, nobody taking advantage of him, selling his body. Is there anything he wouldn't sell? (Emphasis added.)

"You saw his sniveling performance and that's why

I'm going to ask you to depend on *nothing in this case that comes from his mouth because only lies would be the result of that,* but you know he was in the car. We have proven scientifically that he did have a gun there, and he did have in fac[t] an Imperial .22 revolver. (Emphasis added.)

\* \* \*

"We know from the doctor's testimony that the gun was used on George Garrison. *We know that a gun was used on a dog. He died. George Garrison lived. Thank God.* (Emphasis added.)

"So after he had heard this testimony tying him in with this gun, and he heard the testimony of his admission at the arraignment to Detective Baker and Detective Schinning, and after he heard all this, *this even convinced Ken Tarpley, and this is the way the People would want it to be, because they would want you to know on some other testimony other than this man's testimony that he had a gun with him.* (Emphasis added.)

" \* \* \* the .22 was picked up in Warren either dropped or thrown, who knows, by this man as he sought to elude the police, *this innocent man who had been raped,* and that had two discharged cartridges in it, so I guess George Garrison was shot with that gun and *I don't ask you to take that from Ken Tarpley's lips.* (Emphasis added.)

"Did Tarpley shoot Garrison with intent to commit murder, *to murder him?* \* \* \* ." (Emphasis added.)

These are selections from the first seven pages of the opening argument by the prosecutor which totalled almost 22 pages and a closing summary totalled approximately 15 pages. The remaining portion of the opening argument and the closing argument are of a similar nature. We feel that these extracts are ample to indicate the nature of the prosecution's argument *in toto.*

In determining whether or not the prosecutor's comments were prejudicial and inflammatory we

take into consideration the fact that the possession and the presence of the gun were not put in issue at the trial by the defendant. He conceded that he had a gun and pulled it out in the car. He also did not dispute his presence in the car. He did not dispute that the gun which he held shot the complaining witness although he did dispute that he actively and deliberately pulled the trigger, claiming that it was an accidental discharge. Consequently, when the prosecutor stressed these matters in his argument it could be for no other purpose than prejudice since these facts were not in issue although during the course of the trial the prosecutor did attempt to create a situation which would suggest that the defendant was placing the possession of the gun in issue. An examination of the transcript of the testimony does not justify such an inference by the prosecution. Further, when the prosecutor made the statement about a charge of *murder* he was going outside of the scope of the information and the charges against the defendant and outside of the testimony which had been presented. There are also references to the defendant's prior homosexual experiences and references to the allegations of homosexual activity between the complaining witness and the defendant on the evening in question. The manner in which these were presented could not help but inflame and prejudice the minds of the jurors.

The prosecutor in his remarks to this jury relative to his belief in the defendant's guilt and his comments about not being able to believe anything said by the defendant and that "only lies come out of his mouth" may very well have led the jury to suspend its own powers of judgment in reviewing the evidence before it. This was a call upon the jury to bring in a conviction on the opinion of the prosecuting attorney. We hold the remarks to be

highly prejudicial and improper. *People v Humphreys, supra,* 419. That it had this effect seems likely in view of the experience and prestige standing behind the prosecutor's office.

"It is presumable that statements of facts based upon personal knowledge, made by a person occupying the responsible position of prosecuting attorney of a county, whom the people have chosen because of his ability and character to fill that position, would have both weight and influence with the jury, and may have determined any doubt which they, or some of them, may have entertained of the defendant's guilt against him." *People v Dane,* 59 Mich 550 (1886).

In *People v Ignofo,* 315 Mich 626 (1946), the prosecutor stated that the defendant was guilty and that, while the defendant had previously evaded detection, his deed had now caught up with him. In reversing defendant's conviction the Supreme Court stated at page 636:

"In the case at bar the statement of the prosecuting attorney was not an expression of his opinion. It was a statement of fact that should only have been made by a witness. While no objection was made to such statement at the time it was made or specific charge requested of the court, yet in our opinion such statement could not be eradicated from the minds of the jury and is reversible error."

This Court in *People v Slater,* 21 Mich App 561 (1970), held that it was not proper for the prosecutor to make the statement that he knew that the defendant was the one who killed the victim even though it was proper for him to argue the testimony. In *People v Montevecchio,* 32 Mich App 163, 165, 166 (1971), considering the remarks of the prosecutor wherein he characterized the defendant as a professional criminal whose friends perjured

themselves in testifying as to his alibi, the Court quoted favorably from *People v Hill,* 258 Mich 79, 88 (1932), as follows:

"The prosecuting attorney should be permitted to argue the testimony, but has no right to state what he personally thinks or believes of defendant's guilt except as shown by proof. If he has first-hand knowledge of facts which legitimately tend to show defendant's guilt, it is his duty to present them under oath from the witness stand the same as any other witness. If his knowledge is only that based upon the testimony, he should confine himself to his duty as a prosecuting official."

We cannot say with any certainty that an instruction by the court to the jury would have countered the impact and eliminated the prejudice of the many remarks made by the prosecution. *People v Humphreys, supra,* 419.

In the instant case the goal of an objection by the defendant would have been a cautionary instruction by the trial judge. In our opinion an instruction would not have eliminated the prejudice created by the prosecutor's inflammatory and prejudicial remarks especially in the light of the cumulative effect of their number and frequency during the course of the argument. Defendant's failure to object will not, therefore, bar this Court from affording the appropriate relief. *People v Montevecchio, supra,* 166. Defendant need not be bound by his attorney's failure to object since the cumulative effect of the prosecutor's conduct constitutes a miscarriage of justice requiring reversal of his conviction. *People v Brocato,* 17 Mich App 277 (1969).

Reversed and remanded.

All concurred.