PEOPLE v THANGAVELU

Docket No. 78-2309. Submitted April 5, 1979, at Detroit.—Decided
April 1, 1980. Leave to appeal applied for.

Chelliah Thangavelu, a medical doctor, was convicted in Wayne
Circuit Court, Irwin H. Burdick, J., of first-degree criminal
sexual conduct. The charge was brought under that portion of
the criminal sexual conduct statute which provides that the
element of force or coercion may be proven by showing that the
accused engaged in a medical treatment or examination in a
manner or for a purpose which is medically recognized as
unethical or unacceptable. The complainant testified that the
defendant, while examining her pubic area for lice, performed
cunnilingus upon her. While the defendant admitted examining
the complainant's pubic area for lice on the day in question
and making a pelvic examination of the complainant on a
previous occasion, the defendant denied performing cunnilingus
upon the complainant. The prosecution presented no medical
testimony as to whether cunnilingus was an unethical or
unacceptable medical practice or as to whether the nature of
the defendant's examination was an acceptable medical prac-
tice.

During his closing and rebuttal arguments, the prosecutor
indicated that the defendant's manual examination of the
complainant's vagina constituted the necessary act of penetra-
tion needed to establish the crime. The prosecutor's argument
also made reference to rapes in the street, incestual rapes and
rapes by doctors of their patients and questioned why defen-
dant chooses to get "his kicks from his patients", which sug-
gested that defendant was an habitual sex offender despite the
absence of any evidence of similar charges or accusation

REFERENCES FOR POINTS IN HEADNOTES
[1, 2, 5] 31 Am Jur 2d, Expert and Opinion Evidence § 19.
   61 Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 49, 50,
   73.
   70 Am Jur 2d, Sodomy § 19.
[2] 75 Am Jur 2d, Trial §§ 573-575.
[3, 6]75 Am Jur 2d, Trial §§ 192, 193, 218, 219.
[4, 6]75 Am Jur 2d, Trial § 624.

against the defendant. The trial court instructed the jury that the sexual penetration charged in the information was cunnilingus; however, the court did not caution the jury that they must find that cunnilingus had occurred in order to find the defendant guilty of first-degree criminal sexual conduct. Defendant appeals. *Held:*

1. While generally medical testimony will be necessary to establish the element of force or coercion in prosecutions brought pursuant to the unethical or unacceptable treatment or examination provision of the first-degree criminal sexual conduct statute, the act of cunnilingus is so obviously unethical or unacceptable that no medical testimony is needed to establish that fact. If, however, the basis for finding the element of force or coercion is the act of cunnilingus alone, it is necessary that, in the absence of medical testimony to the acceptability of any other acts, the jury's consideration be limited to the act of cunnilingus.

2. The failure of the trial court to specifically instruct the jury that they must find that defendant performed cunnilingus upon the complainant, coupled with the prosecutor's argument that the manual examination of the complainant established the element of penetration, denied defendant a fair trial. Under these circumstances, the jury may have considered the manual examination of the complainant in determining defendant's guilt. Since there was no medical testimony that the type of manual examination constituted an unacceptable or unethical medical practice, and given the fact that the purpose and propriety of such examination might be misunderstood by the jury in the absence of such medical testimony, consideration by the jury of any acts of the defendant other than the alleged act of cunnilingus would deny the defendant a fair trial.

3. The comments of the prosecutor in his closing and rebuttal arguments relative to rapes, coupled with his comments suggesting that defendant was an habitual sex offender, served to deny defendant a fair trial. Defendant's failure to object to those arguments by the prosecutor does not preclude review by the Court of Appeals, since the nature of those comments was such that an instruction to the jury could not have eliminated the prejudice created by the prosecutor's remarks.

Reversed and remanded.

M. F. CAVANAGH, J., dissented. He would hold that not only is there no need to establish the unethical and unacceptable nature of cunnilingus by medical testimony but, also, that neither the closing arguments of counsel nor the instructions

by the court resulted in a denial of a fair trial to the defendant. He would affirm.

OPINION OF THE COURT

1. CRIMINAL LAW — CRIMINAL SEXUAL CONDUCT — EVIDENCE — MEDICAL TESTIMONY — NECESSITY OF MEDICAL TESTIMONY — STATUTES.

Medical testimony is generally required to establish the element of force or coercion in prosecutions brought pursuant to the unethical or unacceptable medical examination or treatment provision of the statute on first-degree criminal sexual conduct; however, the act of cunnilingus is so obviously unethical and unacceptable that no medical testimony need be presented to establish its unethical or unacceptable nature (MCL 750.520b[1][f][iv]; MSA 28.788[2][1][f][iv]).

2. CRIMINAL LAW — CRIMINAL SEXUAL CONDUCT — MEDICAL TESTIMONY — LIMITING INSTRUCTION TO JURY — FAIR TRIAL.

A failure in a first-degree criminal sexual conduct trial of a doctor accused of committing cunnilingus to present medical testimony relative to whether the treatment or examination of the victim was conducted for a purpose or in a manner which is medically recognized as unethical or unacceptable, coupled with a failure to limit the jury's consideration to the alleged act of cunnilingus by the defendant doctor, deprives the defendant of a fair trial, since, while the jury could properly find that cunnilingus is medically recognized as unethical or unacceptable without the need for medical testimony, the jury would need medical testimony to determine whether acts by a doctor other than cunnilingus were medically recognized as unethical or unacceptable.

3. CRIMINAL LAW — CRIMINAL SEXUAL CONDUCT — ARGUMENTS BY PROSECUTOR — FAIR TRIAL.

A defendant who is a medical doctor is denied a fair trial where, in a trial for criminal sexual conduct for medically unethical or unacceptable examination or treatment, the prosecutor, in his closing statement, makes references to rapes in the street, rapes by fathers of daughters and rapes of patients by doctors, states that he did not know why the defendant chose to get his kicks from his patients and made statements which would let the jury speculate that the defendant was an habitual sex offender even though there was no evidence presented of any similar charges or accusations against the defendant.

4. APPEAL — ARGUMENTS BY PROSECUTOR — FAILURE TO OBJECT —
PREJUDICE — MISCARRIAGE OF JUSTICE.

> The lack of an objection at trial to unwarranted prosecutorial
> comments will not preclude review on appeal where an instruc-
> tion to the jury would not have eliminated the prejudice
> created by the prosecutor's remarks; a defendant should not be
> bound by his attorney's failure to object where the cumulative
> effect of the prosecutor's conduct constitutes a miscarriage of
> justice.

DISSENT BY M. F. CAVANAGH, J.

5. CRIMINAL LAW — CRIMINAL SEXUAL CONDUCT — EVIDENCE —
MEDICAL TESTIMONY — JURY INSTRUCTIONS.

> *There is no need for medical testimony in a trial of a doctor
> charged, under the unethical or unacceptable examination or
> treatment portion of the first-degree criminal sexual conduct
> statute, with committing cunnilingus upon a patient where the
> trial court limits the consideration of the jury to that charge,
> since persons of ordinary intelligence could determine that
> cunnilingus is an unethical or unacceptable medical practice
> without the need of medical testimony as to that fact.*

6. CRIMINAL LAW — ARGUMENTS BY PROSECUTOR — RESPONSIVE AR-
GUMENTS — FAILURE TO OBJECT.

> *Allegedly prejudicial prosecutorial comments do not result in a
> denial of a fair trial where the comments are in response to
> defense arguments and are not objected to by defense counsel
> at trial.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Brian Marzec,* Assistant Prosecuting Attorney, for the people.

*Carl Ziemba,* for defendant on appeal.

Before: T. M. BURNS, P.J., and M. F. CAVANAGH and MACKENZIE, JJ.

MACKENZIE, J. Defendant was convicted by a Wayne County Circuit Court jury of first-degree criminal sexual conduct, MCL 750.520b; MSA

28.788(2), on October 24, 1977, and was sentenced to a term of three to ten years. His motion for a new trial was denied, and he appeals as of right.

The complainant alleged that defendant physician conducted a pelvic examination in the course of which he performed cunnilingus on her while she was being examined by him for lice.

At trial, defendant admitted examining the complainant's pubic area for lice after an examination of complainant's two children revealed that they were infested with lice. The examination was performed, according to defendant, because the complainant complained of itchiness. However, he denied that he performed oral sex upon her and contended that the charges were brought as part of an attempt by the complainant to extort money from him. According to his testimony, the night of the alleged offense he received a threatening telephone call from the complainant's husband. Later that evening, the complainant's husband called defendant at his home and offered to drop the whole thing if defendant would pay $5,000 in cash by the next morning. Defendant said he would consult his attorney and hung up the telephone. Complainant admitted on cross-examination that at one time she would have dropped the charges for $10,000.

At the time the act allegedly took place, complainant's father was in the defendant physician's waiting room, and complainant's mother was in another examining room; in addition, the complainant's children, defendant's brother-in-law, and defendant's physician-wife were also on the premises in other areas of the defendant's office suite.

Defendant contends that the trial judge erred in the giving of the instructions on the elements of

first-degree criminal sexual conduct and its lesser
included offenses. First-degree criminal sexual con-
duct is defined in MCL 750.520b; MSA 28.788(2) as
follows:

"Sec. 520b.(1) A person is guilty of criminal sexual
conduct in the first degree if he or she engages in
sexual penetration with another person and if any of
the following circumstances exist:

*   *   *

(f) The actor causes personal injury to the victim and
force or coercion is used to accomplish sexual penetra-
tion. Force or coercion includes but is not limited to any
of the following circumstances:

*   *   *

(iv) When the actor engages in the medical treatment
or examination of the victim in a manner or for pur-
poses which are medically recognized as unethical or
unacceptable."

To find criminal sexual conduct in the first
degree here, the necessary element of force or
coercion had to be established by proof that the
medical treatment or examination was conducted
in a manner or for purposes medically recognized
as unethical or unacceptable.

Defendant asserts that there was no expert evi-
dence explaining the type of conduct that is medi-
cally unethical or unacceptable and that the trial
court's instructions did not provide the jury with
any guidance or standard in order to determine
whether the defendant's conduct was proscribed.

Despite the requirement that the treatment or
examination be *medically* recognized as unethical
or unacceptable, the prosecution produced no med-
ical testimony. It was argued by the prosecutor
that the act of cunnilingus is so obviously unethi-
cal and unacceptable that no medical testimony

need be presented to so inform the jury. While this approach disregards a strict reading of the statutory language, we could subscribe to it if the trial of this case had been limited to the act of cunnilingus. We find, however, that this defendant was deprived of a fair trial because the jury was not limited to consideration of the specific act of cunnilingus charged; rather, the jury was allowed to speculate both about the propriety of making any examination of the pubic area and about the propriety of the nature of a pelvic examination which defendant admitted performing on a date other than the date of the alleged offense. This pelvic examination included insertion of fingers into the complainant's vagina and rectum while she was on her hands and knees on the examination table.

That the prosecutor and the court both regarded the propriety of the pubic examination was at issue is shown by the record. In his opening statement, the prosecutor told the jury that the element of force or coercion was met by "false examination". When defense attorney moved to exclude any jury instruction on first-degree criminal sexual conduct under MCL 750.520b(1)(f)(iv) because there had been no medical testimony, the court denied that motion, stating:

"Now, if we take the testimony of the complainant in the case to the effect that she had no complaint, with respect to her genitals, as far as they were concerned, and *there was no need on the part of the doctor to make any examination on that part,* maybe the jury will believe it, maybe it won't. It will be up to the jury. That part of the motion will be denied." (Emphasis added.)

In his closing argument, the prosecutor deliberately invited the jury not to be limited to consider-

ing whether or not the defendant committed the
act of cunnilingus, indicating that the examination
was unethical medical conduct and that aspects of
the examination involved penetration:

"What crime has been committed? She testified that
the doctor, under the guise of examining her to see if
down there she had any nits or any louse, asked her to
drop her pants and she did. And then she later got up
on the examination table. It was obviously done, using
medical examination as a pretext. That's force, and
that's the first element that is required. The second
element is penetration, okay? We know, of course, she
testified that he put his finger in her rectum. She also
testified that he put his hand in her vagina and what
felt to her to be his whole hand. In other words, she
testified after the incident in which he licked her cli-
toris, he told her to get down on all fours on the
examination table. He pushed her head down and at
that point she felt—in her testimony—what felt like his
whole hand go up her vagina and then he asked her
repeatedly how does that feel? How does that feel; how
does that feel? And her testimony was, 'It feels like
you're hitting a bone', *that's her testimony regarding
penetration.* In addition, she testified that at one point
he licked her clitoris." (Emphasis added.)

The court instructed the jury that the informa-
tion charged that the sexual penetration with
which defendant was charged was cunnilingus, but
the court did not caution the jury that they must
find that cunnilingus occurred in order to find the
necessary element of penetration for first-degree
criminal sexual conduct. Neither was the jury
instructed to disregard touchings and "penetra-
tions" other than cunnilingus in determining
whether defendant was guilty. The lack of medical
testimony and the prosecutor's inference that all
of the physician's actions were prohibited allowed
the jury to conclude that all of defendant's acts

were bad acts and, therefore, he probably performed the act charged. We thus conclude that defendant was deprived of a fair trial.

While no one would argue that medical testimony is necessary to prove that cunnilingus is not acceptable and ethical medical treatment, we believe the better view is to require medical testimony in prosecuting violations under MCL 750.520b(1)(f)(iv). Touchings which are ordinarily prohibited are often necessary for medical examination and treatment. The patient may not be aware of what is medically necessary or acceptable and what is not. Criminal statutes must be strictly construed in favor of the defendant where his substantial rights are concerned. *Dimmers v Hillsdale Circuit Judge,* 289 Mich 482; 286 NW 798 (1939). The statute, directed at the physician who may seek to take improper advantage of the close professional relationship between physician and patient, is clear and unambiguous in requiring that the conduct be *medically* unethical or unacceptable.

Defendant also contends that he was denied a fair trial by different remarks of the prosecutor which appealed to the emotions and prejudices of the jury. A review of the record reveals the following prejudicial comments:

"And the Defense Attorney's statement that all of this allegedly happened out of the clear blue sky doesn't happen that way. There's always some buildup where the man asks for sex. Well, it doesn't happen that way. Maybe in a normal man it doesn't, but it does happen that way. Women are raped on the street, they are raped in their own house. Daughters are raped by fathers. It happens and it happens that doctors rape patients. It does happen or else why would we be in law? Or why is there a special section in law exactly for this crime? If you don't know from your own common

knowledge that that happens, I'm shocked, but it does happen.

"Now, why would he take that risk? I don't know. Thank heavens I'm not called upon to prove beyond a reasonable doubt an answer beyond a reasonable doubt. Every question you have in your mind, that question is in my mind, too. But the reason why he chooses to do this for excitement, the reason he chooses to get his kicks from his patients and the answer to that question is not an element of this crime. It's not something I have to prove. There's no way I could. There is no way I could fathom what goes on in this man's mind, much less prove it to you. The elements that I have to prove are penetration, injury and force and that's it. Those have to be proved beyond a reasonable doubt. And let's understand this, presumption of innocence and beyond a reasonable doubt."

The prosecutor's reference to women being raped on the street, daughters being raped by their fathers, and patients being raped by their doctors was unnecessary and highly prejudicial. Of even greater prejudice was the prosecutor's statement that he did not know why the defendant chose to "get his kicks from his patients". There was no testimony of any similar charges or accusations against defendant, yet the prosecutor's use of the plural let the jury speculate that defendant is an habitual sex offender.

The remarks at issue were not met with an objection. However, if prosecutorial comments nonetheless result in the denial of a fair trial, they may be cause for reversal. *People v Knolton*, 86 Mich App 424, 428; 272 NW2d 669 (1978). We conclude that the remarks, having the effect of arousing the passions of the jury and diverting its attention from the proper issues, resulted in a miscarriage of justice.

We additionally note that the prosecutor's re-

marks concerning the credibility of witnesses strayed dangerously close to constituting an expression of personal opinion. See *People v Couch,* 49 Mich App 69; 211 NW2d 250 (1973). Particularly inappropriate were the remarks that defendant's nurse would "say anything", that she "wasn't worth cross-examining" and that she would "make it up as she went along".

Repeated expressions in closing argument conveyed the prosecutor's opinion that defendant was lying. This Court in *People v Tarpley,* 41 Mich App 227, 237; 199 NW2d 839 (1972), on a similar record of multiple inflammatory and prejudicial remarks reversed despite the failure of defense counsel to object, stating:

"In the instant case the goal of an objection by the defendant would have been a cautionary instruction by the trial judge. In our opinion an instruction would not have eliminated the prejudice created by the prosecutor's inflammatory and prejudicial remarks especially in the light of the cumulative effect of their number and frequency during the course of the argument. Defendant's failure to object will not, therefore, bar this Court from affording the appropriate relief. *People v Montevecchio,* [32 Mich App 132 (1971)] *supra,* 166. Defendant need not be bound by his attorney's failure to object since the cumulative effect of the prosecutor's conduct constitutes a miscarriage of justice requiring reversal of his conviction. *People v Brocato,* 17 Mich App 277 (1969)."

Reversed and remanded for a new trial. T. M. Burns, J., concurred.

M. F. Cavanagh, J. *(dissenting).* I cannot agree with my sister's conclusion that the trial court's instructions did not provide the jury with any guidance or standard by which they could deter-

mine whether the defendant's conduct was pro-
scribed. The trial court clearly instructed on first-
degree criminal sexual conduct, MCL 750.520b;
MSA 28.788(2), and clearly instructed the jury on
the definition of cunnilingus. I can conceive of no
instance when cunnilingus could be medically rec-
ognized as an ethical or acceptable practice. The
average lay person or juror would not need expert
medical testimony to come to this same conclusion.
The meaning of the language here involved is
understandable to a person of ordinary intelli-
gence and, for this reason, I feel the jury was
competent to make this determination. *People v
Cabassa,* 249 Mich 543, 549; 229 NW 442 (1930).
This is not to say that medical testimony is unnec-
essary in most conceivable prosecutions under this
section of the statute. It is only because this par-
ticular practice is readily understandable by a
juror as being medically unethical or unaccepta-
ble.

A reading of the closing arguments of counsel
and instructions by the court in their entirety
persuades me that this defendant was not denied a
fair trial. The portion of the transcript quoted by
the majority to indicate that the trial court placed
the question of the propriety of the entire exami-
nation before the jury occurred outside the pres-
ence of the jury and was never again mentioned or
referred to in the court's instructions. The portion
of the prosecutor's argument cited by the majority
occurred on rebuttal and clearly was in response
to matters propounded by a defense counsel during
his closing argument. The prosecutor's comments
in closing and rebuttal when read in their entirety
did not exceed the bounds of permissible advocacy.
I also take note of the fact that neither the in-
structions given by the trial court nor any of the

comments of the prosecuting attorney were objected to by defense counsel.

This was a close case. It basically resolved itself down to a matter of credibility between the complainant and the defendant. The defendant through cross-examination of the complainant, by his own testimony, and by defense counsel's argument clearly presented to the jury defendant's theory of the case. The fact that the jury chose to disbelieve the defendant's version does not mean that he was denied a fair trial. I would affirm the conviction.