PEOPLE v RONE (ON REMAND)

Docket No. 53614. Submitted October 17, 1979, at Detroit.—Decided November 21, 1980.

Junior C. Rone was convicted of second-degree murder, assault with intent to commit murder and felony-firearm in Detroit Recorder's Court, Michael J. Connor, J. The defendant appealed. The Court of Appeals, in an unpublished opinion, affirmed all of the convictions. The defendant sought leave to appeal to the Supreme Court. The Supreme Court in lieu of granting leave to appeal remanded the case to the Court of Appeals for amplification of the reasons for its decision and, specifically, to consider whether the trial court's unrequested instructions concerning the procedures to be followed after a verdict of not guilty by reason of insanity constituted error. 409 Mich 903 (1980). Defendant alleges on appeal that 1) the Court of Appeals, in denying his motion for additional time to file an appellate brief, violated his due process rights, 2) the trial court's decision *sua sponte* to instruct the jury on the post-trial effect of a verdict of not guilty by reason of insanity constitutes

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 688.

Right to file briefs in trial court. 86 ALR2d 1233.

[2] 75 Am Jur 2d, Trial § 713.

[3, 4, 13] 75 Am Jur 2d, Trial § 738.

[5] 21 Am Jur 2d, Criminal Law § 183.

40 Am Jur 2d, Homicide § 190.

[6] 75 Am Jur 2d, Trial § 727.

[7] 5 Am Jur 2d, Appeal and Error § 623.

[8] 5 Am Jur 2d, Appeal and Error § 891

[9] 21 Am Jur 2d, Criminal Law §§ 55, 62.

[10] 21 Am Jur 2d, Criminal Law § 315.

Incompetency of counsel chosen by accused as affecting validity of conviction. 74 ALR2d 1390.

[11] 21 Am Jur 2d, Criminal Law §§ 82, 107.

When intoxication deemed voluntary so as to constitute a defense to criminal charge. 73 ALR3d 195.

Modern status of rules as to voluntary intoxication as defense to criminal charge. 8 ALR3d 1236.

[12] 75 Am Jur 2d, Trial § 888.

reversible error, 3) his separate conviction for possessing a firearm during the commission of a felony violates his constitutional right to be free of double jeopardy, 4) the trial court erred in failing *sua sponte* to instruct the jury on the defense of intoxication, 5) the trial court erred in instructions preparing the jury for expert psychiatric testimony on the defense of insanity, 6) the prosecutor's closing argument contained remarks prejudicial to his case, 7) the guilty but mentally ill statute denied him his constitutional rights to due process and equal protection of the laws, and 8) he was denied the effective assistance of counsel. *Held:*

1. The authority of the Court of Appeals to permit the filing of an appellant's brief more than 90 days after a claim of appeal or transcript is filed is governed by Michigan court rule and additional time may be ordered for cause shown. Here, no error was shown.

2. Basic to the function of a trial court is its duty to instruct the jury on all elements of a charged crime whether requested by the parties or not. Central to this requirement is the necessity that instructions make understandable to a jury the legal concepts they are to apply.

3. A trial court should have independent authority to instruct on the disposition of a defendant found insane to insure a jury's fair consideration of all possible verdicts brought into issue. A trial judge may instruct a jury *sua sponte* as to the post-trial effect of a verdict of not guilty by reason of insanity.

4. The defendant's convictions for murder, assault with intent to commit murder, and of felony-firearm arising from the same transaction does not violate the defendant's right to be free of double jeopardy.

5. A trial judge must include instructions on any theories or defenses raised if supported by the evidence. Here, due to insufficient evidence supporting a finding that the defendant was intoxicated, the trial judge was not required to instruct the jury *sua sponte* as to the possible mitigating effect of intoxication. Absent a request for the intoxication instruction, the Court of Appeals will not reverse a conviction unless manifest injustice would result and here there is no finding of manifest injustice.

6. There was no error in the trial court's instructions in preparing the jury for expert psychiatric testimony on the defense of insanity.

7. The prosecutor's closing argument was not inflammatory, nor did the remarks make reference to matters not in evidence. The prosecutor's closing statement shows no manifest prejudice

to the defendant. Since the defendant raised no objection to the prosecutor's remarks, appellate review is precluded.

8. The defendant was not denied his constitutional rights to due process and equal protection of the laws by the statute on guilty but mentally ill.

9. The defendant was not denied the effective assistance of counsel.

Affirmed.

D. S. DeWITT, J., did not participate.

M. F. CAVANAGH, P.J., concurred, but wrote separately to express his belief that the precedent case of *People v Cole,* 382 Mich 605; 172 NW2d 354 (1969), is bad law and should be discarded by the Supreme Court.

OPINION OF M. J. KELLY, J.

1. APPEAL — COURT OF APPEALS — APPELLANT'S BRIEF — TIMELY FILING — COURT RULES.

The Court of Appeals authority to permit the filing of an appellant's brief more than 90 days after a claim of appeal or transcript is filed is governed by Michigan court rule and additional time may be ordered for cause shown (GCR 1963, 815.1[1]).

2. CRIMINAL LAW — JURY INSTRUCTIONS — ELEMENTS OF CRIME.

Basic to the function of a trial court is its duty to instruct the jury on all elements of a charged crime, whether requested by the parties or not; this is intended to secure the defendant's right to a jury trial which includes the right to a properly instructed jury and that instructions make understandable to a jury the legal concepts they are to apply (MCL 768.29; MSA 28.1052).

3. CRIMINAL LAW — TRIAL — INSANITY — JURY INSTRUCTIONS.

A trial court should have independent authority to instruct on the disposition of a defendant found insane to insure a jury's fair consideration of all possible verdicts brought into issue.

4. CRIMINAL LAW — INSANITY — JURY INSTRUCTIONS.

A trial judge may instruct a jury *sua sponte* as to the post-trial effect of a not guilty by reason of insanity verdict.

5. CRIMINAL LAW — CONSTITUTIONAL LAW — FELONY-FIREARM — DOUBLE JEOPARDY.

Convicting a defendant of murder and of possession of a firearm during the commission of a felony arising from the same

transaction does not violate the defendant's right to be free of double jeopardy (US Const, Am V, Const 1963, art 1, § 15.)

6. CRIMINAL LAW — JURY INSTRUCTIONS — EVIDENCE.

A trial judge must include instructions on any theories or defenses raised, if supported by the evidence.

7. APPEAL — COURT OF APPEALS — JURY INSTRUCTIONS — REVERSAL.

Absent a request for a particular jury instruction made by a defendant, the Court of Appeals will not reverse a conviction for the trial court's failure to give such an instruction unless manifest injustice would result.

8. CRIMINAL LAW — APPEAL — PROSECUTOR'S REMARKS — CURATIVE INSTRUCTIONS.

A defendant's failure to object to remarks of the prosecutor precludes appellate review on the issue that such remarks were prejudical to the defendant unless it can be said that a timely requested curative instruction would not have eliminated the claimed prejudice or that the comments denied the defendant his right to a fair trial.

9. CRIMINAL LAW — GUILTY BUT MENTALLY ILL — CONSTITUTIONAL LAW — STATUTES.

The statute on guilty but mentally ill does not deny a defendant his constitutional rights to due process and equal protection of the laws (MCL 768.36; MSA 28.1059).

10. CRIMINAL LAW — EFFECTIVE ASSISTANCE OF COUNSEL — STANDARDS.

The standard for effective assistance of counsel requires that defense counsel perform at least as well as a lawyer with ordinary training and skill in the criminal law; a serious mistake but for which a defendant would have had a reasonably likely chance of acquittal can constitute grounds for a valid claim of ineffective assistance.

11. CRIMINAL LAW — INTOXICATION — DEFENSES.

The defense of intoxication is of limited utility except where the charged offense requires a specific intent for its commission.

CONCURRENCE BY M. F. CAVANAGH, P.J.

12. CRIMINAL LAW — JURY INSTRUCTIONS — COURTS.

*The courts and juries of Michigan should be returned to the salutary rule that the jury is not to be concerned with the penalty, which is a matter for the discretion of the court.*

13. CRIMINAL LAW — INSANITY — INSTRUCTIONS ON DISPOSITION OF
    DEFENDANT — COURTS.
    *The rule requiring the court to instruct the jury that a defendant
    found not guilty by reason of insanity is not thereby released
    and discharged but is committed to a mental hospital should be
    disapproved and the Michigan Supreme Court case adopting
    that rule should be overruled.*

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, *Edward Reilly Wilson,* Prin-
cipal Attorney, Appeals, and *Timothy A. Baugh-
man,* Assistant Prosecuting Attorney, for the peo-
ple.

*Neil A. Strefling,* for defendant on appeal.

Before: M. F. CAVANAGH, P.J., and M. J. KELLY
and D. S. DEWITT,* JJ.

M. J. KELLY, J. On April 19, 1978, defendant was
convicted of second-degree murder, MCL 750.317;
MSA 28.549, three counts of assault with intent to
commit murder, MCL 750.83; MSA 28.278, and
four counts of possession of a firearm during the
commission of a felony, MCL 750.227b; MSA
28.424(2). Defendant was sentenced under the in-
determinate sentencing act to life imprisonment
on the second-degree murder count and to a prison
term of 10 to 30 years for each count of assault
with intent to murder. He also received a manda-
tory two-year prison term for each of the four
felony-firearm counts. Defendant's subsequent ap-
peal of right to this Court resulted in an unpub-
lished memorandum opinion affirming each of the
convictions. *People v Rone,* Docket No. 78-2461,
released December 12, 1979. The decision is now
remanded to this Court on order of the Supreme

* Circuit judge, sitting on the Court of Appeals by assignment.

Court, for "amplification of the reasons for its decision", 409 Mich 903 (1980). We are also directed to consider "whether the trial court's unrequested instructions concerning the procedures to be followed after a verdict of not guilty by reason of insanity constituted error" under *People v Cole,* 382 Mich 695; 172 NW2d 354 (1969).

On September 2, 1977, defendant, while armed with a .22 semi-automatic rifle, entered the Band Drug Store in the City of Detroit. He was looking for the manager when, suddenly and without apparent provocation, he shot the pharmacist, Allen Margolis. Defendant then exited from the store, whereupon he encountered Mary and Robert Rish. He then asked Miss Rish if Robert was her "old man", and proceeded to shoot Robert in the side of the head.

Shortly after the above shootings, Detroit police officer James Lawless observed the defendant in the neighborhood carrying a rifle. When Lawless identified himself as a police officer, the defendant began shooting at him as well. Defendant then retreated into a nearby house where he was arrested. A subsequent search of the defendant's home disclosed the body of Mary Stevens, with whom the defendant had been living. Miss Stevens was later found to have been shot three times with a .22-caliber rifle.

At trial the defense presented the testimony of Dr. Norman G. Pothyress, a clinical psychologist, in support of its proposed defense of insanity. Dr. Pothyress opined that the defendant was mentally ill at the time of the shootings. He also suggested that defendant had likely consumed a considerable amount of alcohol both the day of and day before the shootings.

Defendant first contests as a violation of due

process this Court's denial of his motion for additional time to file an appellate brief. Defendant specifically alleges that this denial violated his due process right to effective oral arguments on appeal. On October 5, 1978, the defendant was provided substitute appellate counsel, after the 60-day period for filing briefs provided in GCR 1963, 815.1(1) had expired. On October 19, 1978, defense counsel petitioned this Court for an additional 60 days to file his brief. We granted a 20-day extension in an order dated November 6, 1978.

This Court's authority to permit the filing of an appellant's brief more than 90 days after a claim of appeal or transcript is filed is governed by GCR 1963, 815.1(1). Under this rule, additional time may be ordered "for cause shown". We hold that no error was committed. Defendant's appellate brief was not in fact filed until February 26, 1979, three months after expiration of the original 20-day extension. Further, arguments were not scheduled on defendant's case until October, 1979; counsel made no motion for oral argument although the case call specifically noted the time requirements for filing motions and told "all attorneys not endorsed must move for oral argument". This allegation of error is not only meritless but specious.

Defendant next alleges as reversible error the trial court's decision *sua sponte* to instruct the jury on the post-trial effect of a verdict of not guilty by reason of insanity. The trial judge instructed as follows:

"If you make such decision, the defendant will be immediately committed to the custody of the center for forensic psychiatry for a period not to exceed sixty days. During that time the statute directs that the center thoroughly examine and evaluate the present mental

condition of the defendant in order to reach an opinion as to whether he is mentally ill and requires medical treatment.

"Within the sixty day period, the center will file a report with the Court, Prosecuting Attorney and Defense Counsel. If the report states that the person is not mentally ill or does not require treatment, the defendant shall be discharged from custody. If the report finds that the person is mentally ill and does require treatment, the Court may direct the Prosecuting Attorney to file a petition with the Probate Court for an order of hospitalization or an order of admission to a clinical facility.

"If the court so directs the center may retain the person pending such a hearing. If after a hearing before a Probate Court, the defendant is found not to be mentally ill or not to be a person requiring treatment, the defendant shall be discharged. However, if the person is ordered hospitalized, admitted to a facility or otherwise (to) receive treatment he shall not be discharged or placed on leave without prior consultation with the center for forensic psychiatry.

"If hospitalized, the defendant will be hospitalized until his mental condition is such that he is no longer judged to require treatment."

In *People v Cole,* 382 Mich 695; 172 NW2d 354 (1969), the Supreme Court considered as a matter of first impression the question whether a jury should be apprised of the consequences of returning a verdict of not guilty by reason of insanity.[1] The Court concluded in favor of the instruction, when requested by the defendant or jury. In so holding, the *Cole* Court adopted the rationale supporting the instruction expressed in *Lyles v United States,* 103 US App DC 22, 25; 254 F2d 725 (1957):

---

[1] Unlike the present case, the Supreme Court in *Cole* did not have before it the issue of an unrequested instruction. Nor did the Court endeavor to address the issue.

"This point arises under the doctrine, well established and sound, that the jury has no concern with the consequences of a verdict, either in the sentence, if any, or the nature or extent of it, or in probation. But we think that doctrine does not apply in the problem before us. The issue of insanity having been fairly raised, the jury may return one of three verdicts, guilty, not guilty, or not guilty by reason of insanity. Jurors, in common with people in general, are aware of the meanings of verdicts of guilty and not guilty. It is common knowledge that a verdict of not guilty means that the prisoner goes free and that a verdict of guilty means that he is subject to such punishment as the court may impose. But a verdict of not guilty by reason of insanity has no such commonly understood meaning. As a matter of fact its meaning was not made clear in this jurisdiction until Congress enacted the statute of August 9, 1955 [69 Stat 610, DC Code § 24-301 (1951) (Supp V)]. It means neither freedom nor punishment. It means the accused will be confined in a hospital for the mentally ill until the superintendent of such hospital certifies, and the court is satisfied, that such person has recovered his sanity and will not in the reasonable future be dangerous to himself or others. We think the jury has a right to know the meaning of this possible verdict as accurately as it knows by common knowledge the meaning of the other two possible verdicts."

Accord, *People v Hampton,* 384 Mich 669, 674-676; 187 NW2d 404 (1971), *People v Gray,* 57 Mich App 289, 297; 225 NW2d 733 (1975). See also *People v Ashford,* 91 Mich App 693; 283 NW2d 830 (1979), in which the Court found no manifest injustice arising from the trial court's unobjected-to decision to *sua sponte* instruct the jury in this manner.

Two subsequent cases in this Court have considered the specific allegation of error raised by defendant. In *People v Samuelson,* 75 Mich App 228; 254 NW2d 849 (1977), the Court interpreted the *Cole* reference to a request by the jury or defense counsel as impliedly prohibiting a *sua sponte* dis-

position instruction. The *Samuelson* Court did not, however, find the lower court's unrequested instruction to be reversible error. It concluded that the *Cole* "automatic commitment charge" mistakenly given by the trial court under MCL 767.27b; MSA 28.966(12), was more helpful to defendant's insanity defense than a disposition instruction under the then recently enacted Mental Health Code, MCL 330.2050; MSA 14.800(1050).[2]

The more recent decision in *People v Tenbrink,* 93 Mich App 326; 287 NW2d 223 (1979), *lv den* 408 Mich 945 (1980), offers a differing analysis. The *Tenbrink* Court quoted the following additional language from *Lyles, supra,* pages 25-26:

"Sometimes a defendant may not want such an instruction given. If that appears affirmatively on the record we would not regard failure to give it as grounds for reversal. Otherwise, whenever hereafter the defense of insanity is fairly raised, the trial judge shall instruct the jury as to the legal meaning of a verdict of not guilty by reason of insanity in accordance with the view expressed in this opinion."

The *Tenbrink* Court then reasoned that in *Cole* the Supreme Court adopted the *entire* rationale offered in *Lyles,* including the requirement of a disposition instruction for insanity defenses. The Court also rejected the argument that the new Mental Health Code's disposition procedures would alter its finding:

---

[2] The latter provision established a required period of forensic center commitment not to exceed 60 days, during which the defendant is to undergo tests and examinations to determine his continuing mental condition. MCL 330.2050(1); MSA 14.800(1050)(1). A report on the defendant's mental health is then required to be prepared and submitted to the court, which may direct the prosecutor to prepare a petition seeking a more permanent commitment and course of treatment. MCL 330.2050(2)(3); MSA 14.800(1050)(2)(3).

"Nor do we feel that the change in the law relative to the possible disposition of one found 'not guilty by reason of insanity' requires a different result. While the *Lyles* rule related to an automatic commitment statute similar to Michigan's when *Cole* was decided, the District of Columbia code was amended in 1970 to require a sanity hearing within 50 days. This is similar to the new Michigan mental health code in effect at the time of trial in the case at bar. In *United States v Brawner*, 153 US App DC 1, 28-30; 474 F2d 969 (1972), the Court reconsidered the *Lyles* change and held that the instruction should be revised to conform with the statute as amended. The instructions in the instant case conformed with Michigan's new law. On the basis of *Lyles, Brawner* and *Cole* we find no reversible error in the *sua sponte* instructions of the trial court relative to possible dispositions of the defendant if he were found 'not guilty by reason of insanity' or 'guilty but mentally ill'." 93 Mich App 326, 330.

We agree with the result reached in *Tenbrink,* but subscribe to a different approach.

Basic to the function of a trial court is its duty to instruct the jury on all elements of a charged crime, whether requested by the parties or not. MCL 768.29; MSA 28.1052, *People v Ashford, supra.* Imposition of this duty is intended to secure the defendant's right to a jury trial, which includes the right to a properly instructed jury. *People v Lewis,* 91 Mich App 542; 283 NW2d 790 (1979). Central to this requirement is the necessity that instructions make understandable to a jury the legal concepts they are to apply. As explained in *People v Lambert,* 395 Mich 296, 304; 235 NW2d 338 (1975):

"[J]uries cannot be allowed to speculate. It is the function of the court to inform the jury of the law by which its verdict must be controlled. The purpose of instructions is to enable the jury to understand and

apply the law to the facts of the case. The accused has a right to have a jury pass upon the evidence under proper instructions." (Footnote omitted.)

As noted in *Cole* and *Lyles,* the basis for instructing a jury on the consequences of a not guilty by reason of insanity verdict is the judicial recognition that jurors do not generally understand the results of such a decision. Thus, to find error in the lower court's instruction would run contrary to the rationale approved in *Cole.*[3] To insure a jury's fair consideration of all possible verdicts brought into issue, a trial court should have independent authority to instruct on the disposition of a defendant found insane. We therefore conclude that a trial judge may *sua sponte* instruct a jury as to the post-trial effect of a not guilty by reason of insanity verdict.

Defendant next alleges a violation of his consti-

---

[3] We note with approval the following discussion in *People v Thomas,* 96 Mich App 210, 223; 292 NW2d 523 (1980), a case in which the trial court gave a disposition instruction over defense counsel's objection:

"In this connection, there is much to be said for adopting a truth and accuracy test as a measure of the correctness of a trial judge's instruction regarding the effect of a not guilty by reason of insanity verdict or a guilty but mentally ill verdict. It is just as wrong and erroneous to mislead a jury into believing there is *no* public safety factor in either of those verdicts because a defendant will *not* be released until it is *certain* that he will not commit further violent crime as it is to mislead a jury into believing a defendant will automatically be released from a mental hospital within a very short time after either of these verdicts. The argument for the truth and accuracy of the jury instruction test rests on the practical assumption that under our adversary system the prosecutor and the defense counsel will each indirectly and obliquely seek to persuade the jury of their respective, differing versions of what happens after a not guilty by reason of insanity verdict or a guilty but mentally ill verdict and that the best way to combat these efforts is by telling the jury what the law provides. Leaving the question of whether or not to give this jury instruction to the whim of the defendant imparts a kind of judicial gamesmanship to the trial. Confidence in the jury should override the fear that somehow knowledge of what happens to a defendant in the case of a not guilty by reason of insanity or a guilty but mentally ill verdict will result in an unjust verdict."

tutional right to be free of double jeopardy, US
Const, Am V; Const 1963, art 1, § 15, arising from
his separate conviction for possessing a firearm
during the commission of a felony. Under the
authority of the decision of *Wayne County Prose-
cutor v Recorder's Court Judge,* 406 Mich 374; 280
NW2d 793 (1979), it is determined that defendant's
convictions did not violate the constitutional prohi-
bition against double jeopardy.

The fourth issue raised by defendant concerns
the trial court's failure to *sua sponte* instruct the
jury on the defense of intoxication. In *People v
Reed,* 393 Mich 342, 349-350; 224 NW2d 867 (1975),
the Supreme Court summarized the duties of a
trial court to properly instruct its jury. If sup-
ported by the evidence, a trial judge must include
instructions on any theories or defenses raised.
*People v Reed, supra, People v Hoskins,* 403 Mich
95, 100; 267 NW2d 417 (1978). In this case, the sole
reference to intoxication was that made by the
defendant's expert psychiatric witness who, based
upon conversations he had with the defendant and
several witnesses, suggested the defendant had
been drinking heavily the day of the incident. We
note, however, the hearsay nature of this testi-
mony offered solely in support of defendant's claim
of insanity. Had the expert attempted to establish
by direct testimony a defense claim of intoxication,
such evidence would have been inadmissible as
hearsay. Absent additional evidence supporting a
finding that defendant was intoxicated, the trial
judge was not required to instruct the jury *sua
sponte* as to the possible mitigating effect of intoxi-
cation.

We also note the defendant's failure to request
an intoxication instruction. Absent such a request,
this Court will not reverse unless manifest injus-

tice would thereby result. *People v Crawford,* 89 Mich App 30, 36; 279 NW2d 560 (1979). Our review of this issue discloses no such manifest injustice.

Defendant asserts error arising from the trial court's instructions in preparing the jury for expert psychiatric testimony on the defense of insanity. *People v Mikulin,* 84 Mich App 705; 270 NW2d 500 (1978). However, our review of the trial court indicates instructions in substantial compliance with CJI 7:8:01 as required by *Mikulin.* Thus, no reversible error was suffered by the defendant.

Defendant next asserts that the prosecutor's closing argument contained remarks prejudicial to the defendant's case. Specifically, he complains of the following statements made during rebuttal:

"But, is that to say that they are immune from criminal prosecution, because the acts which they committed upon their fellow men and women were so reprehensible? The law was not intended to unbridle the passions of men and women, to allow them to go through the world and murder, kill and plunder and then assert that they did that as the result of a mental defect."

\* \* \*

"Now are we to let people go about consuming large volumes of alcohol and then go out on the streets and shoot, kill and maim and murder and come in and say, 'Ah, I had some mental problems.'?"

\* \* \*

"\* \* \* I hope that that is a verdict that you are able to live with today, tomorrow, next week and as long as you are here on this good earth."

Defense counsel raised no objection to these remarks. Such failure to object precludes appellate review unless it can be said that a timely requested curative instruction would not have elimi-

nated the claimed prejudice, *People v Champion,* 97 Mich App 25; 293 NW2d 715 (1980), or that the comments denied defendant his right to a fair trial. *People v Thangavelu,* 96 Mich App 442; 292 NW2d 227 (1980). The prosecutor's remarks were not so inflammatory that curative instructions would be unable to eradicate the claimed prejudice. *E.g., People v Lewis,* 37 Mich App 548; 195 NW2d 30 (1972). Nor did the remarks make reference to matters not in evidence. *People v Thangavelu, supra.* Finally, review of the prosecutor's closing statement in its entirety shows no manifest prejudice to the defendant. His argument did not suggest a "civic duty" to convict or disparagement of the defense of insanity. Had defense counsel entered objections to the prosecutor's remarks, the trial court's curative instructions could have erased any prejudice to defendant.

Defendant next argues that the guilty but mentally ill statute, MCL 768.36; MSA 28.1059, under which the jury was instructed denied to the defendant his constitutional rights to due process and equal protection of the laws. His due process argument rests upon the allegation that the psychiatric treatment statutorily mandated will not, in fact, be provided. Defendant's equal protection argument alleges that the law creates an irrational classification between defendants found guilty but mentally ill and those found not guilty by reason of insanity. Each of these arguments was addressed, and dismissed, however, in *People v McLeod,* 407 Mich 632; 288 NW2d 909 (1980). We thus find no merit in defendant's constitutional arguments.

Defendant lastly contends he was denied the effective assistance of counsel when his attorney (1) failed to request an instruction on intoxication

as a theory of defense, (2) failed to object to the previously noted prosecutorial comments during closing argument and, (3) failed to seek dismissal of the second-degree murder charge or request an instruction on manslaughter.

In *People v Garcia,* 398 Mich 250; 247 NW2d 547 (1974), the Supreme Court adopted the standard for effective assistance articulated in *Beasley v United States,* 491 F2d 687, 696 (CA 6, 1974), requiring defense counsel to "perform at least as well as a lawyer with ordinary training and skill in the criminal law". The *Garcia* Court also approved this Court's decision in *People v Degraffenreid,* 19 Mich App 702; 173 NW2d 317 (1969), finding that a "serious mistake" but for which defendant would have had a reasonably likely chance of acquittal could constitute grounds for a valid claim of ineffective assistance. We shall discuss the individual bases claimed by defendant to constitute ineffective assistance *seriatim.*

The defense of intoxication is of limited utility, except where the charged offense(s) require(s) a specific intent for its commission. In *People v Crittle,* 390 Mich 367, 371; 212 NW2d 196 (1973), the Supreme Court quoted its previous opinion in *People v Walker,* 38 Mich 156, 158 (1878), for the effect of an intoxication defense:

"While it is true that drunkenness cannot excuse crime, it is equally true that when a certain intent is a necessary element in a crime, the crime cannot have been committed when the intent did not exist. In larceny the crime does not consist in the wrongful taking of the property, for that might be a mere trespass; but it consists in the wrongful taking with felonious intent; and if the defendant for any reason whatever, indulged no such intent, the crime cannot have been committed."

See also *People v Stanton,* 97 Mich App 453; 296 NW2d 70 (1980). Thus, had defense counsel raised as a defense the alleged intoxication of the defendant, such defense would necessarily have been limited to the assault with intent to commit murder charges.[4]

Despite the availability of intoxication as a defense to the assault charges, we find the defendant's argument unavailing. From the record there was little evidence of intoxication. Moreover, defense counsel was likely aware that such an instruction would not be a defense to the second-degree murder or felony-firearm charges. It appears defense counsel merely chose to emphasize the insanity defense rather than distract the jury with another defense which might appear to be flimsy. This decision by counsel was part of his trial strategy. The fact that the strategy failed does not mean that counsel was ineffective.

We have already determined that no prejudice was imposed upon the defendant by the prosecutor's remarks during closing arguments. Defendant's claim of ineffective assistance of counsel for failure to object to such remarks is thus without merit. As every trial lawyer knows, objections often underscore points made by the opposition.

The final rationale proposed in support of defendant's claim of ineffective assistance is defense counsel's failure to move for dismissal of the second-degree murder charge or for instructions on

[4] See *People v Taylor,* 98 Mich App 685; 296 NW2d 631 (1980), rejecting the defendant's argument that intoxication is a defense to second-degree murder, an offense not requiring specific intent to kill. See also *Wayne County Prosecutor v Recorder's Court Judge,* 406 Mich 374, 396-398; 280 NW2d 793 (1979), in which the Supreme Court discussed the elements required to prove a violation of the felony-firearm statute but did not find specific intent necessary. But see *People v Fields,* 64 Mich App 166; 235 NW2d 95 (1975), holding assault with intent to commit murder to be a specific intent crime.

the lesser included offense of manslaughter. We disagree. The evidence presented at trial as to second-degree murder was more than adequate to withstand a motion for directed verdict of acquittal. *People v Hampton,* 407 Mich 354; 285 NW2d 284 (1979). Further, defense counsel's failure to request instructions on manslaughter could be a matter of trial strategy. In effect, by not requesting such instructions defense counsel may have attempted to force the jury into an "all or nothing" decision. Defendant was not deprived of his constitutional right to the effective assistance of counsel.

Affirmed.

D. S. DeWITT, J., not participating.

M. F. CAVANAGH, P.J. *(concurring).* I concur in affirmance. The unobjected to disposition instruction was not error under *People v Cole,* 382 Mich 695; 172 NW2d 354 (1969). I write separately only to express my belief that *Cole, supra,* is bad law. I would urge our Supreme Court to discard the anomaly of *Cole* and adopt the reasoning of Justice T. E. BRENNAN in *People v Szczytko,* 390 Mich 278; 212 NW2d 211 (1973).